OPINION OF THE COURT
Meyer, J.
The core issue on this appeal is whether a warrantless *234 search is permissible on the basis of information supplied without any indication of how the informant acquired his knowledge when the police have been able to confirm by their own inquiry and observation details supplied by the informant which are personal in nature and not in any way suggestive of criminal activity. In the jargon of criminal law practitioners, we deal with the Spinelli[1]-Draper[2] aspects of the second ("basis of knowledge”) prong[3] 4of the Aguilar[4] test. The Trial Judge denied suppression of the gun seized as a result of the search, after which defendant pleaded guilty and then appealed the denial of his suppression motion (GPL 710.70, subd 2). The Appellate Division, by a divided court, reversed. The majority concluded on the basis of our decisions in People v West (44 NY2d 656), People v Wirchansky (41 NY2d 130), and People v Hanlon (36 NY2d 549) that, as a matter of law, probable cause had not been demonstrated since the observations by the police were as consistent with innocent behavior as with criminal conduct. The dissenters reasoned, on the basis of Spinelli and Draper, that the latter fact was not dispositive when the corroborated noncriminal facts set "the information apart from the category of rumor” and "supplied the police with an ample basis for crediting the information.”[5] (66 AD2d, at pp 176, 177.)
We affirm the Appellate Division’s holding that for police ' observation to constitute the verification that will establish probable cause and permit a warrantless search or arrest predicated upon data from an informer who has not revealed the basis for his knowledge, it is not enough that a number, even a large number, of details of noncriminal activity supplied by the informer be confirmed. Probable cause for such an arrest or search will have been demonstrated only when there has been confirmation of sufficient details suggestive of or directly related to the criminal activity informed about to make reasonable the conclusion that the informer has not simply passed along rumor, or is not involved (whether pur *235 posefully or as a dupe) in an effort to "frame” the person informed against. To the extent that Spinelli and Draper may be read as imposing a less stringent test under the Federal Constitution,[6] we decline to construe the parallel provision of our State Constitution[7] similarly and adopt the rule set forth above as a matter of State constitutional law.[8]
The context in which the issue arises is a telephone call received on February 18, 1977 at 11 p.m. by Charles Hancock, an investigator in narcotic matters employed by the City of Elmira, from a person with whom he had previously dealt and who had provided him with information which Hancock had been able to verify as reliable. The informant advised Hancock that Steve Elwell and Joanne Smith were in possession of a .25 caliber automatic pistol, were operating a red Le Mans bearing New York registration 915 DWY with a CB antenna on the back, that the car was in the vicinity of Lincoln Street and that Elwell and Smith would be leaving the area at any time. The informant did not say how he knew or obtained the information he gave Hancock.
Shortly thereafter Hancock, together with a New York State police investigator, drove down Lincoln Street until they found the described car. A license check showed the vehicle to be registered to Joanne Smith. Not long thereafter a woman drove the Le Mans out of the driveway in which it was parked. The investigators followed her to a grocery store and then back to the Lincoln Street driveway. Sometime later the same woman, now accompanied by a man, entered the vehicle and drove away, the man driving. A short distance away the car was stopped, the occupants were identified as Steve Elwell and Joanne Smith and advised that the investigators had information that Elwell had a loaded firearm in his possession. A search of Elwell’s person was negative but on looking under the front seat the investigators found a loaded .25 caliber Colt automatic. The gun was not in plain view although as the State investigator approached the car he was able to see on the back seat a shoe box on top of which were some targets used for target practice.[9]
*236 It would be an act of supererogation to repeat the history, so fully reviewed in Mr. Justice Douglas’ dissent in Draper v United States (supra, at p 314), of the oppressive practices which led to the adoption of the Fourth Amendment. Suffice it to note that the purpose of the amendment, as well as of the corresponding State constitutional provision, is protection of innocent and guilty alike from search or arrest based upon suspicion or upon common rumor and report rather than upon proof of reasonable grounds for believing a crime to have been committed, either through direct evidence or through reasonable inferences from suspicious acts. The reason as so succinctly put by Professors Hogan and Snee in their article entitled The McNabb-Mallory Rule: Its Rise, Rationale and Rescue (47 Geo LJ 1, 22) is that: "Arrest on mere suspicion collides violently with the basic human right of liberty. It can be tolerated only in a society which is willing to concede to its government powers which history and experience teach are the inevitable accoutrements of tyranny.”
Out of this deep concern for individual liberty have evolved the concepts that the standards for assessment of the existence of probable cause are at least as stringent for a warrant-less search or arrest as are those applied when reviewing the materials presented to a Magistrate as the basis for his issuance of a warrant (Whiteley v Warden, 401 US 560, 566)[10] and that though the issuance of a warrant or the making of a warrantless search or arrest may be based upon hearsay information the Magistrate or officer must be informed of the underlying circumstances from which the informant concluded that there was criminal activity and which establish the informant’s reliability (Aguilar v Texas, 378 US 108). The purpose for requiring that the hearsay informant be of known reliability and that the source of his knowledge be revealed is to assure that action infringing upon a person’s liberty not be taken without "reasonably trustworthy information [of facts and circumstances] sufficient in themselves to warrant a man of reasonable caution in the belief’ that an offense has been committed (Carroll v United States, 267 US 132, 162; Beck v Ohio, 379 US 89, 96; see CPL 140.10, subd 1, par [b]).
The central thought, therefore, is that there be evidence suggestive of criminal activity of a quality, though hearsay, *237 reasonably to be acted upon. The possibility that the informant’s guile, gregariousness or gullibility may cause him to pass on unreliable or even deliberately false information mandates Aguilar’s "reliability” and "basis of knowledge” tests, and requires that when either is not met the search or arrest be invalidated unless the quality of the information can be otherwise established.
Reliability of the informant as distinct from his information can be established either by the arresting, or warrant-seeking, officer attesting to past instances of reliability or by the personal observation by the police of sufficient details corroborative of the informant’s data to indicate that he knew whereof he spoke. Reliability of the informant, therefore, can be corroborated by details concerning dress, mannerisms, route or conveyance to be used by the subject of the information, which in themselves are wholly unsuggestive of crime.
That the informant has demonstrated general reliability in the past is, however, no index of the reliability of specific information he passes on; he may have received it from a totally unreliable source. There being no presumption that the informant speaks with personal knowledge (Giordenello v United States, 357 US 480, 486; People v West, 44 NY2d 656, 657, supra; People v Hendricks, 25 NY2d 129, 137), the basis of knowledge test is, therefore, intended to weed out, as not of sufficient quality, data received by the informant from others who have not themselves observed facts suggestive of criminal activity. It follows that when the basis of the informant’s knowledge is not given, personal police observation corroborative of data received from the informant should be regarded as sufficient only when the police observe facts suggestive of criminal activity. Otherwise privacy and liberty may be invaded by a warrantless search or arrest based solely on the quality of the informant and not at all on the quality of the information, i.e., its suggestiveness of criminal activity.
With few exceptions[11] our decisions, while not fully articulating the basis for so doing, have followed that reasoning. Thus in People v West (44 NY2d 656, supra), we reversed and dismissed the indictment where arrest was made on information which did not reveal the informant’s source and police surveillance disclosed only that defendant had a conversation with a third person in front of his home and was present at *238 the Rensselaer train station, but no observation that "served to corroborate the informant’s statement that defendant was trafficking in drugs” (id., at p 658). Likewise in People v Wirchansky (41 NY2d 130, supra) we reversed and granted a motion to suppress material obtained pursuant to a search warrant, where the informant stated that "gambling paraphernalia commonly associated with a bookmaking and policy scheme, are being left in a common hallway of 8-10 School St. mainly [sic] a mailbox, which is picked up by Stephen Wirchansky each day” but did not state how the information was obtained and all that the police observed was Wirchansky’s entry on four consecutive days into the hallway of 8-10 School Street where he remained for but a few minutes. Writing for the court, Judge Cooke, as he then was, stated the question as "whether these observations indicate criminal activities on the part of defendant” (id., at p 133), a question answered by holding that "the police observations must do more than merely bolster the informant’s tip, since the police themselves must provide the underlying circumstances from which the Magistrate can determine whether they are justified in concluding that illegal activity is taking place” and that "[sjince the observed activities are susceptible of an interpretation of innocent activity, the informant’s tip and the defendant’s reputation[12] should not be allowed to elevate these activities to the level of probable cause” (id., at pp 135-136). Like holdings are to be found in People v Brown (24 NY2d 421, 424); People v Verrecchio (23 NY2d 489; cf. People v Seney, 34 NY2d 817); People v Horowitz (21 NY2d 55).
Confusion concerning whether an informant’s tip together with police observation of noncriminal activity can constitute probable cause arises from Draper v United States (358 US 307) and cases in the Supreme Court and this court applying its rule. In Draper general reliability (i.e., of the informant) was established by the narcotics agent’s testimony that he had always found information given by the informant to be accurate and reliable. The information given was that Draper had recently taken up residence at a stated address in Denver and was selling narcotics to addicts, that he had gone to Chicago by train to obtain three ounces of heroin and would be returning on the morning of either September 8 or 9 also by *239 train, that he would be carrying a tan zipper bag and habitually "walked real fast.” It included a detailed description of Draper and the clothing he would be wearing. The Supreme Court opinion does not indicate whether the basis of the informant’s knowledge was given[13] and discussed only whether hearsay could be considered in determining probable cause and whether, if so, the information received established probable cause. It answered both questions in the affirmative, concluding as to probable cause that when the agent on September 9 saw a person of the same physical attributes and wearing the precise clothing described by the informant alight from an incoming Chicago train and start to walk at a fast pace to the exit, he had verified every part of the information except the criminal activity (whether he had in fact obtained the heroin) and, therefore, had reasonable grounds to believe that Draper did in fact have heroin with him and to arrest him.
Whatever doubts may have existed concerning Draper’s holding were laid to rest in Spinelli v United States (393 US 410). In that case the Supreme Court held that Aguilar’s basis of knowledge requirement was not met either by the informer’s statement as to how he received his information or by FBI surveillance which showed only that Spinelli, said by the informant to have been running a bookmaking operation, used the telephones specified by the informant. Contrasting Spinelli’s facts with those of Draper, the court concluded that from the observations made in Draper "[i]t was then apparent that the informant had not been fabricating his report out of whole cloth; since the report was of the sort which in common experience may be recognized as having been obtained in a reliable way, it was perfectly clear that probable cause had been established” (393 US, at pp 417-418). The difference between the two situations appears to be in degree; in Draper the data given was so specific as to make it reasonable to conclude that it was obtained by personal contact (observation, conversation, or both) with defendant by the informant or the informant’s informant; in Spinelli it was equivocal and, therefore, insufficient.
There is, perhaps, more reason for applying Draper’s exception when the details, the specificity of which amounts to self- *240 verification, relate to the crime itself, rather than to physical characteristics and intended movements as in Draper. People v Hanlon (36 NY2d 549, supra) furnishes an illustrative situation. Two appeals were involved there, one by Hanlon as to whom the informant stated that a large quantity of marihuana in block form was concealed in a kitchen closet and a small caliber chrome-plated pearl-handled derringer was hidden in a dresser drawer of Hanlon’s rear bedroom, and the second by Rosen and Fredericks as to whom the informant gave the police a complete and detailed description of the operation of an illegal football pool, including where the tickets were printed, how many per week were printed and distributed, the dates and times of pickups for distribution, the system used for transportation and distribution. During surveillance on several different nights known narcotics users were seen entering and leaving the Hanlon premises. Surveillance of Rosen’s print shop showed Fredericks, a known bookmaker whom the informant had identified as an operator, to be the principal distributor and confirmed in every detail the pattern of activity recounted by the informant. We upheld the search warrants in both cases; as to Hanlon without reference, other than recital of the fact, to the observation confirmatory of criminal activity (traffic of known narcotic users into and out of the premises); with respect to Rosen and Fredericks without any observations confirmatory of criminal activity other than Fredericks’ reputation (which is above noted is normally not enough). No differentiation between the two situations as to criminal as distinct from noncriminal detail was made.
We have applied or referred to Draper in a number of other cases.[14] In People v Morales (42 NY2d 129, 135) and People v Hendricks (25 NY2d 129, 136, supra) we recognized its rule but held the data received not sufficiently detailed. In People v Hicks (38 NY2d 90, 92) and People v Castro (29 NY2d 324, 326-327) we cited Draper in upholding a warrant and an arrest based on actual observation, relying also in Castro on the specificity of noncriminal detail given by the informer. In *241 People v Munger (24 NY2d 445, 452) we upheld the warrant despite the lack of detail in the informant’s tip about a narcotics plant, because defendant and three girls known to be his "plant” girls were observed entering the building, in which was located an apartment rented by yet another woman known to be a "plant” girl. In People v Stewart (41 NY2d 65, 69) and People v Malinsky (15 NY2d 86, 91) we upheld the arrest or warrant based on specificity of detail, though the only detail in Stewart was a physical description of defendant and his clothing and in Malinsky was that stolen goods were located in a particular building, outside of which the police the next day saw defendants and a large number of cartons.
To be noted from the foregoing review of the case law is the difficulty, if not impossibility, of reconciling the results of the decisions,[15] some of which required observation of criminal activity while others have accepted observation of noncriminal activity without clearly differentiating one from the other. Bearing in mind the balance to be struck between the individual’s constitutional right to be free of official interference by way of search or arrest with society’s interest in preventing crime and apprehending criminals, the uneven application of the Draper rule, the ease with which details of personal description can become in the official’s mind a substitute for inquiry concerning the basis of the informant’s knowledge with consequent improper intrusion on individual liberty, the temptation under Draper to sustain an arrest or search by hindsight inclusion of observed physical characteristics or movements in the data said to have been received from the informant, and the greater possibility of danger to individual rights from a warrantless arrest or search than when a Magistrate has examined into the basis for a warrant, we conclude that the rule under our Constitution should be that a warrantless search or arrest will be sustained only when the police observe conduct suggestive of, or directly involving, the criminal activity about which an informant who did not indicate the basis for his knowledge has given information to the police, or when the information furnished about the criminal activity is so detailed as to make clear that it must have been based on personal observation of that activity (e.g., *242 United States v Ventresca, 380 US 102, 104, 108-110;[16] see People v Hanlon, 36 NY2d 549, 557, supra; People v Schnitzler, 18 NY2d 457, 460). A Magistrate in issuing a warrant may, however, act on the basis of observation confirmed noncriminal detail but should do so only when in his judicial opinion the noncriminal detail received from the informant is so explicit and extensive and so well confirmed by police observation as to warrant the inference that the informant or his source was speaking from personal observation.[17]
In the instant case, nothing that the police observed suggested criminal activity in any way. They were, therefore, without authority to stop or to arrest defendant Elwell. Accordingly, the order of the Appellate Division should be affirmed.

. (Spinelli v United States, 393 US 410.)

. (Draper v United States, 358 US 307.)

. Both lower courts found the first ("reliability”) prong met by the testimony at the suppression hearing.

. (Aguilar v Texas, 378 US 108.)

. The dissent noted further the applicability of the doctrine of Carroll v United States (267 US 132) to permit a warrantless search, defendant having been in a car when stopped. Since we conclude there was no probable cause we need not reach that question.

. (US Const, 4th Amdt.)

. (Art I, § 12.)

. (Cooper v Morin, 49 NY2d 69, 79, and cases there cited.)

. Presence of the targets would not sustain the arrest, they not portending criminal activity, and in any event not being observable until after defendant was stopped without probable cause (People v Smith, 42 NY2d 961; People v Allende, 39 NY2d 474).

. To apply less stringent standards for reviewing the officer’s discretion-"would discourage resort to the procedures for obtaining a warrant” (Whiteley v Warden, supra, at p 566).

. (See text infra, at pp 239-241.)

. So, in the instant case, that Elwell had a prior conviction of which the officers apparently were aware does not save the situation (accord Spinelli v United States, 393 US 410, 414, 418).

. Spinelli v United States (393 US 410, 416) confirms that the Draper informant "did not state the way in which he had obtained his information.”

. Not discussed in the text are citations for propositions of law not germane to the present discussion (People v De Santis, 46 NY2d 82, 88; People v Feliciano, 32 NY2d 140, 142; People v Martin, 32 NY2d 123, 124; People v Coffey, 12 NY2d 443, 452; People v Loria, 10 NY2d 368, 373; and citations in dissenting opns: People v Brown, 40 NY2d 183, 191; People v Sutton, 32 NY2d 923, 929).

. One differentiating factor recognized by the cases is the independence and expertise of the Magistrate who issues a warrant (see, e.g., People v Hanlon, 36 NY2d 549, 559, supra).

. In Ventresca the charge was maintaining an illegal still. The affidavit, without stating who observed what, stated that the affiant and fellow investigators on two occasions smelled mash at 4 in the morning, on one of which the sound of a pump was heard, on the other of which metallic noises were heard; on four occasions observed 60-pound bags of sugar being carried in, and on two occasions empty tin cans being brought in; on several occasions saw apparently full five-gallon cans being loaded into a car at one place and unloaded from the car at another.

. To the extent that any prior decision has not distinguished between detail concerning criminal and noncriminal activity in passing upon warrantless searches or arrests we decline to follow it.