■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v WILL SMARR, Appellant.—Judgment, Supreme Court, New York County, rendered on December 5, 1978, convicting defendant, after trial by jury, of the crime of criminal possession of a weapon in the third degree, and sentencing him to an indeterminate term of from two to four years, and order of the court, rendered June 7, 1978, denying defendant's motion to suppress physical evidence, unanimously reversed, on the law, the motion to suppress physical evidence granted, and indictment dismissed. During the early evening hours of March 6, 1978, two New York City Housing Authority Police Officers, Angel Garcia and Peter Killie, were on routine foot patrol in the St. Nicholas Houses. Glancing through a rear stairway window, Officer Garcia noticed the defendant standing in front of an adjacent building some 90 feet away, also housing authority property, with both hands in his pockets. These officers were admittedly aware that this sector was prone to incidents of robbery and was a known drug area. Garcia did not recognize defendant as a tenant and watched his activities for a period of five minutes. During this time the defendant, with his head down, was observing apparently by design, elderly women carrying handbags who passed his vantage point. The officers left their location to inquire. From a distance of approximately 50 feet, defendant saw the approaching uniformed officers and immediately fled. The officer's call to halt went unheeded and a foot chase ensued. Officer Garcia caught up with defendant in the vestibule of a nearby building,

where the defendant immediately raised his hands in submission. The officer, without inquiry, put defendant's hands against the wall, frisked him, and recovered a loaded weapon. The question presented is a familiar, yet troublesome one, for appellate courts. Did the observations of the police officers indicate criminal activity on the part of defendant so as to elevate these activities to a level of probable cause and thus sanction the level of intrusion utilized? We have concluded that while defendant's conduct, as he observed the passing senior citizens, may conceivably have raised police suspicion to the point where justification existed for inquiry, certainly no further invasion of privacy was authorized (*People v De Bour,* 40 NY2d 210). Nor did defendant's flight heighten this suspicion to a level where a search was warranted. The totality of the observations of these conscientious police officers is not suggestive of criminal activity (*People v Elwell,* 50 NY2d 231). Rather they are susceptible to an interpretation not inconsistent with innocent behavior. The officer's rationale that defendant was "acting in a suspicious manner" and the subsequent flight do not form an insufficient basis for relinquishment of a constitutional right. Concur—Fein, J. P., Ross and Carro, JJ.; Silverman, J., concurs in the result only.