THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v
RICHARD DINKINS, Appellant.

First Department, August 28, 1980

### APPEARANCES OF COUNSEL

*Robert S. Dean* of counsel *(William E. Hellerstein,* attorney),
for appellant.

*Carlos E. Mendez-Penate* of counsel *(Mark Dwyer* with him
on the brief; *Robert M. Morgenthau, District Attorney,* attor-
ney), for respondent.

**OPINION OF THE COURT**

FEIN, J. P.

Upon defendant's appeal from a judgment of the Supreme Court, New York County, rendered on July 27, 1977 convicting defendant, after a jury trial, of criminal possession of a weapon in the third degree, we reversed the judgment and remanded the case for a new trial (69 AD2d 384). The grounds of our reversal were that defendant had been denied a fair trial because the People in their cross-examination of the defendant and his brother denied the defendant a fair trial. Justices Fein and Lane, concurring in part and dissenting in part, agreed that the cross-examination constituted reversible error but would have granted appellant's suppression motion. Justice Birns and Silverman dissented and found both the cross-examination and the search proper. Justice Fein granted leave to the defendant to appeal the search and seizure issue to the Court of Appeals, and Justice Silverman granted the People leave to appeal the order granting a new trial.

However, by order entered December 13, 1979, the Court of Appeals dismissed both appeals, the People's on the ground that this court's order partially resulted from an exercise of discretion, and appellant's on the ground that the order appealed from was not adverse to him as required by CPL 450.90 (subd 1).

On remand, the defendant pleaded guilty to attempted criminal possession of a weapon in the third degree and was sentenced to an indeterminate term of 1½ to 3 years' imprisonment. Execution was stayed pending appeal of the denial of the motion to suppress and the denial of defendant's motion to dismiss on the ground he had been denied a speedy trial.

We would be required to affirm on the basis of this court's decision on appellant's prior appeal, affirming the denial of the motion to suppress, were it not for *People v Elwell,* 50 NY2d 231, which is to the contrary and requires that the motion to suppress be granted and the indictment be dismissed.

A comparative analysis of the facts in our case and in *Elwell* makes clear that probable cause was lacking for the search of defendant's automobile in which the offending weapon, a shotgun, was found. In *Elwell,* a known and reliable informant informed the police that Steve Elwell and Joanne Smith were in possession of a .25 caliber pistol, in a red Le

Mans with a CB antenna on the back, bearing New York registration 915 DWY. The police found the car in a driveway at the indicated location. Shortly thereafter, a woman drove the car to a nearby grocery. The police followed her there and back to the driveway. Soon thereafter the same woman, accompanied by a man, entered the car and drove off, the man driving. A short distance away, the police stopped the car and advised the occupants, Elwell and Smith, that the police had information that Elwell had a loaded firearm in his possession. A search of Elwell produced nothing. However a loaded .25 caliber Colt automatic was found under the front seat. Suppression was directed because "a warrantless search or arrest will be sustained only when the police observe conduct suggestive of, or directly involving, the criminal activity about which an informant who did not indicate the basis for his knowledge has given information to the police, or when the information furnished about the criminal activity is so detailed as to make clear that it must have been based on personal observation of that activity" *(People v Elwell,* 50 NY2d 231, 241, *supra.)*

In our case defendant was arrested by police officers Quinn and McAndrews at approximately 11:15 P.M. on August 29, 1976. The officers had received a radio run that there was a "man with a shotgun" in a blue Buick, parked at 114th Street and Eighth Avenue bearing license number 407 YPW. The source of the information was an anonymous 911 telephone call. When the officers arrived on the scene, they "observed the defendant exiting the vehicle" which conformed to the description in the radio run, except for the last letter in the license plate, a *U* instead of a *W,* a discrepancy which concededly does not affect the propriety of the ensuing search. The facts relating to the search are undisputed. Officer Quinn, after shouting to defendant to "freeze", approached the parked car. Without attempting to observe the interior of the vehicle by looking through the windows, Officer Quinn opened the door and discovered a shotgun between the driver's seat and the door. According to Quinn, the defendant was approximately 15 to 20 feet from the vehicle at the time. While Quinn went to the vehicle, McAndrews proceeded toward the defendant who had been walking along the street away from the blue Buick, and had stopped at the command, "freeze". Both officers had their guns drawn. McAndrews "grabbed" defendant from behind and frisked him and found no weapon.

However, Quinn had already searched the vehicle and found the shotgun. Defendant was thereupon placed under arrest by McAndrews.

On the trial, defendant claimed transitory innocent possession of the weapon, that he had taken it away from one Kurt who had attempted to injure defendant.

Under the tests spelled out in *Elwell,* there was plainly an insufficient basis for the warrantless search of the vehicle. The search was not shown to be necessary to protect the lives or insure the safety of the officers. There were no exigent circumstances to justify such search, at least without first stopping defendant for appropriate inquiry concerning the information imparted to the officers in the radio run. The facts are almost parallel with those in *Elwell.* If anything, the *Elwell* facts are stronger. The source of the information in *Elwell* was a reliable informant. Here, the source was an anonymous 911 telephone call. Although such information might be sufficient to justify the police officers in stopping to inquire of a suspect who met the description, and frisking him if necessary *(People v McLaurin,* 43 NY2d 902), such a tip is an insufficient predicate for a warrantless search of the vehicle. There was no proof in any way associating defendant's emergence from the vehicle with the approach of the officers. There is no evidence to support the suppression court's finding that "the defendant, upon seeing the police car, hurriedly exited from his vehicle and walked briskly away from the police down the middle of the street". Both officers testified that their vehicle was some distance behind the blue Buick when they saw defendant emerge from it. There was no testimony to establish or to found an inference that defendant got out of the vehicle because he saw the police approach, as found by the suppression court in denying the motion to suppress. The undisputed testimony of both officers was that Quinn searched the vehicle by opening the driver's door to look inside before McAndrews, the recorder in the police vehicle, had reached the defendant to inquire of or to frisk him. It does not appear that either officer had concluded at the time the search was conducted that defendant did not or could not have had the weapon on his person. The record is silent as to any appropriate justification for the officers first proceeding to search the vehicle before stopping and detaining the defendant for appropriate inquiry.

In *Elwell* the individual was searched first. The vehicle search followed the failure to find the weapon on Elwell.

As in *Elwell,* beyond the description there was no evidence or suggestion of criminal activity observed by the police. The Court of Appeals there stated (pp 234-235): "We affirm Appellate Division's holding [66 AD2d 172, 3d Dept, 1979] that for police observation to constitute the verification that will establish probable cause and permit a warrantless search or arrest predicated upon data from an informer who has not revealed the basis of his knowledge, it is not enough that a number, even a large number, of details of noncriminal activity supplied by the informer be confirmed. Probable cause for such an arrest or search will have been demonstrated only when there has been confirmation of sufficient details suggestive of or directly related to the criminal activity informed about to make reasonable the conclusion that the informer has not simply passed along rumor, or is not involved (whether purposefully or as a dupe) in an effort to 'frame' the person informed against."

Here, as in *Elwell,* there were no details suggestive of or directly related to the criminal activity informed about. Defendant merely "exited" his vehicle. The police had no probable cause to arrest the defendant or to search the vehicle. It may well be that there was sufficient to stop and inquire. No basis is shown for the search.

In *People v Bluitt* (33 NY2d 997) where the tip was the advice of an unidentified person who pointed to a vehicle in motion and told the officers, "That man in the car have a gun", the officers stopped the car and ordered defendant out of the vehicle. When a frisk of his person did not disclose a weapon, one of the officers reached under the driver's seat and retrieved a revolver not visible before. Suppression was granted, albeit the informant was on the scene although unidentified. There was no probable cause for the search of the vehicle.

As in *Elwell,* the informant here never revealed how he came to acquire this information. Since he failed to disclose the basis of his acquisition of the information, the requirement was not met that the informant be credible or reliable and that he have a sufficient basis for concluding that the subject of the tip is engaged in illegal activities *(People v Elwell, supra; People v West,* 44 NY2d 656, 657).

Here there is lack of any proof as to the manner by which

informant acquired the information. There is no showing that the person who placed the 911 call revealed how he or she acquired knowledge of the presence of the shotgun in the blue Buick.

As held in *People v Stewart* (41 NY2d 65, 66) it is necessary first to "examine the predicate for the police action and then determine whether or not that predicate justified the extent of the official intrusion on the individual." In *Stewart* (p 68) the anonymous tip ("a male Negro wearing a long green coat * * * in front of 101 South Oxford Street" with a gun) was held insufficient to sustain a search. "In that situation, the police have only the common-law power to inquire for purposes of maintaining the *status quo* until additional information can be acquired" *(People v Stewart, supra,* p 69). In *People v La Pene* (40 NY2d 210) the court granted suppression where the anonymous phone call was that there was a male Negro wearing a red shirt with a gun in a bar. The police went to the bar and without any preliminary inquiry of the defendant or anyone else, ordered the defendant, who fit the description, to freeze and raise his hands, after which they frisked him.

There was insufficient evidence upon which to found the conclusion that criminal activity was afoot. At least none was observed by the police. The limited details they observed were consistent with the informant's information, all noncriminal activity. No criminal activity or even suspicious activity was observed by the police before the seizure.

The police action was not "reasonably related in scope to the circumstances which rendered its initiation permissible *(People v Cantor,* 36 NY2d 106, 111)," *(People v La Pene,* 40 NY2d 210, 222-223.)

*People v Elwell* requires suppression.

Suppression of evidence is hard medicine. However, failure to conform to the requirements of the Fourth Amendment and the corresponding State constitutional provision requires no less sanction. I share some of the doubts and questions raised in Justice SILVERMAN's concurrence. However, the same doubts and questions necessarily inhere in every Fourth Amendment case. The purpose of the amendment is protection of the "innocent and guilty alike from search or arrest based upon suspicion or upon common rumor and report rather than upon proof of reasonable grounds for believing a crime to have been committed, either through direct evidence or through

reasonable inferences from suspicious acts." *(People v Elwell,* 50 NY2d 231, 236, *supra.)* Probable cause is a nebulous concept. However it is the constitutional safeguard against arbitrary police action. That it creates a tension is manifest. This is one of the many tensions inherent in an "ordered liberty", delimited by the restrictions of the Bill of Rights. The resolution of these tensions in specific cases may well produce curious results. This is almost inevitable in the decision-making process where constitutional precepts are necessarily invoked. The basic human right of liberty demands compliance with a stringent standard when the issue is search and seizure and arrest. We know too well from history and our own day the dangers of arbitrary police action. The checkrein of probable cause is all too frequently ignored. That defendant is a previously convicted felon should not bar him from its protection. In the exercise of his constitutional rights he is one with all of us.

We have examined defendant's claim that he was denied a speedy trial, and we find it to be without merit.

The judgment, Supreme Court, New York County, rendered May 5, 1980 convicting defendant upon his plea of guilty of attempted criminal possession of a weapon in the third degree, and sentencing him to an indeterminate term of from 1½ to 3 years' imprisonment, should be reversed on the law, the motion to suppress the physical evidence granted, and the indictment dismissed.

SILVERMAN, J. (concurring). I concur on the authority of the Court of Appeals decision in *People v Elwell* (50 NY2d 231).

However, the broad language of that opinion still leaves me with disturbing questions as to its applicability and effect in the specific exigent fact situation involved in this case.

We have here a telephone report to the police that there is a shotgun in a particular described car in a particular location. The police arrive there and see defendant walking briskly away from the car which is thus left unlocked and unattended. One officer frisks defendant; the other opens the unlocked door of the car and sees a sawed-off shotgun between the seat and the door. The critical question becomes whether the action of the police officer in opening the unlocked door of the car was such an unreasonable invasion of the defendant's right to be left alone that we should suppress the gun and dismiss the indictment. In *People v La Pene* (40 NY2d 210,

222-223) the Court of Appeals said: "In evaluating the police action we must consider whether or not it was justified in its inception and whether or not it was reasonably related in scope to the circumstances which rendered its initiation permissible *(People v Cantor,* 36 NY2d 106, 111). We bear in mind that any inquiry into the propriety of police conduct must weigh the interference it. entails against the precipitating and attending conditions. By this approach various intensities of police action are justifiable as the precipitating and attendant factors increase in weight and competence. * * * Where a police officer entertains a reasonable suspicion that a particular person has committed, is committing or is about to commit a felony or misdemeanor, the CPL authorizes a forcible stop and detention of that person (CPL 140.50, subd 1; see *Terry v Ohio,* 392 US 1; *People v Cantor, supra)."*

No doubt there are areas in this State where possession of a shotgun is not a cause for suspicion. In New York City, a shotgun—particularly a sawed-off shotgun, as it turned out to be—is a grave and frightening omen of extremely illegal conduct; almost its only use is in the commission of crime. Here the officers are told that there is a shotgun in the car in one of New York's numerous high crime areas. It is almost midnight. Are the police to be satisfied merely on a showing that the man who was in the car is walking away and is not armed? There is a danger that the car will soon be moved. There is the danger that an associate or a confederate might gain access to the car or the shotgun. (At the trial it appeared that defendant's brother was right at the scene and perhaps there was another man with whom defendant had arrived.) *(People v Dinkins,* 69 AD2d 384, 387.) While the gun is not technically in plain sight, it is almost so; it was simply between the seat and the door in an unlocked car. It does not appear whether the gun would have been observable by looking through the car windows *(id.,* at p 386). How much expectation of privacy can the owner of the gun expect with respect not to his person but to an unlocked car which he is leaving with the gun thrust between the seat and the door? Thus the stimulus to police action was greater and the invasion of privacy less than was involved in *People v Elwell.* It seems to me that the police action in opening the unlocked door of the car in the present case was "reasonably related in scope to the circumstances which rendered its initiation permissible." How could the police, consistently with their duty

to protect the safety of the community, have just walked away from this unlocked car in which they reasoanbly suspected there was a shotgun? It may be suggested that the police officers should have questioned defendant first. It is certainly questionable whether police officers who reasonably suspect the presence of a shotgun—and if concealed on defendant's person, probably a sawed-off shotgun—should be required to make inquiries without taking adequate precautions for their own safety. But quite apart from questions of the officers' safety, I do not think the failure to question the defendant before opening the car door should make a difference in this case. Suppose the officers had questioned him and asked him whether there was a shotgun in the car; if he said yes, they would obviously have the right to open the car door to seize the shotgun, as they did; and if he said no, could the police officers just walk away? It seems to me that in either case, the police officers would have had to look inside the car, and if they saw the shotgun, take it.

However, under the language of *People v Elwell* (50 NY2d 231, *supra)* as I read it, subject to further explication by the Court of Appeals, I agree we must suppress the gun and say that the police officers' action was legally unjustified.

There are ironic aspects in this case. There was a trial in which defendant contended that a third person had tried to kill him with the shotgun and that he had taken the shotgun from that person and that all he had was legal transitory possession. He was convicted on trial. We reversed and ordered a new trial because a majority of this court thought the cross-examination of the defendant and his brother as to why they failed to mention to the police this immediately preceding attempt to kill the defendant was improper. On reversal, defendant now pleads guilty, thus indicating that his story on the previous trial was a fabrication. But now, we reverse and dismiss the indictment because the search was illegal.

To defendant, a previously convicted felon—so we really cannot hope for his esteem—the law is confirmed as an utterly powerless bugaboo fit to frighten only credulous children. (Only the law's inefficiency and delay, as a result of which defendant has served two years in prison, can shake defendant in this view!)

But even to that larger public—whose stewards we are and from whose consent we derive our just powers—this case must surely raise very serious questions.

Ross and CARRO, JJ., concur with FEIN, J. P.; SILVERMAN, J., concurs in an opinion.

Judgment, Supreme Court, New York County, rendered on May 5, 1980, reversed, on the law, the motion to suppress the physical evidence granted, and the indictment dismissed. The matter is remitted to the trial court for the purpose of entering an order in favor of the accused pursuant to CPL 160.50, not less than 30 days after service of this court's order upon the respondent, with leave during this 30-day period to respondent to move and seek any further stay of the implementation of CPL 160.50 as in the interest of justice is required.