OPINION OF THE COURT
Jasen, J.
The question before us is whether, in the circumstances of this case, the courts below could properly conclude that a police informant was sufficiently reliable and was possessed of a sufficient basis of knowledge to justify the warrantless arrest of defendant based upon that informant’s tip.
This case arises out of a police investigation focused upon the Brown Social Club at 233 Eldridge Street in Manhattan, a gathering place thought by police to be a source of illegal narcotics. Detective William Burbage, a New York City police officer assigned to the United States Department of Justice to aid in narcotics investigations in the city, was charged with the duty of observing the club from the window of an apartment across the street. On October 31,1977, Burbage observed the defendant Jose Rodriguez at the Brown Social Club between 2:00 and 3:00 p.m. talking to various people within and without the club. He was identified at that time by a motor vehicle registration check of his automobile which was parked in front of the club.
Later that day, Burbage was notified that an individual named Louis Garcia, who was in police custody on an unrelated charge, had information which he was willing to relate upon condition that his co-operation be noted with appropriate authorities. Burbage immediately went to meet Garcia at Beekman Downtown Hospital where the latter was receiving medical treatment while in custody. During a lengthy interview, Garcia gave what Burbage would *487 later describe as a “run-down” on eight individuals involved in the sale of large quantities of heroin. The information conveyed matched to a great extent facts already uncovered by the police in their on-going investigation. Indeed, some of those mentioned had already been apprehended on drug charges. Garcia stated that he acquired his knowledge of this illegal activity through narcotics dealings with several people involved in the drug trade on Eldridge Street.
With respect to defendant Rodriguez, Garcia related the following information: that Rodriguez was the manager of the Brown Social Club; that he supplied the club with heroin for sale to customers; that he owned a 1965 Buick and that the first three numbers on its license were 964; that the Buick was multicolored on the right side because of body damage; that Rodriguez went daily between 8:00 and 9:00 A.M. to an apartment on Second Street between First and Second Avenues to obtain heroin from a white male named “Jerry”, which Rodriguez would then deliver to the club; and that the heroin would be wrapped in multicolored packets which would in turn be wrapped in newspaper. Garcia also gave the police a description of Rodriguez which accurately described the man observed by the police earlier in the day.
On the strength of this information, a police surveillance team was set up the next morning to observe the area of Second Street between First and Second Avenues described by Garcia. At approximately 8:30 A.M., police observed defendant’s car, a 1965 Buick, license number 964 GMY, with damage and coloration as described by Garcia, parked upon the described portion of Second Street with one unidentified female occupant. Police also observed defendant enter and later exit from 73 Second Street, a four-story apartment building. The police did not see what apartment defendant visited in 73 Second Street and did not know what if anything occurred upon his visit there. When defendant emerged into the street, he re-entered his car and began to drive away. He was stopped by the police shortly thereafter at Houston Street and Second Avenue. He was immediately arrested and searched.
As a result of the search, police found a newspaper- *488 wrapped package containing 350 multicolored packets, each containing heroin, in defendant’s sock. In his other sock was another package containing over 300 packets. Also, some 51 “aluminum” packets containing cocaine, along with two marihuana cigarettes, were found in defendant’s shirt pocket.
Defendant was charged with several crimes based upon his possession of illegal drugs. He moved to suppress the physical evidence obtained from him at the time of his arrest. This motion was denied after a hearing on November 20, 1978. Following the denial of his suppression motion, defendant failed to appear at his next scheduled court appearance. His bail was declared forfeited and a warrant was issued for his arrest. He was later arrested and pleaded guilty to one count of criminal possession of a controlled substance in the third degree (Penal Law, § 220.16) in satisfaction of the entire indictment and was sentenced to a term of imprisonment of from three to nine years. On appeal, the Appellate Division affirmed defendant’s conviction, without opinion, one Justice dissenting.
In this court, defendant asserts, as he did below, that the warrantless seizure of his person and. the concomitant seizure of the illegal drugs he carried were unlawful because the police did not have probable cause to believe he had committed any crime. He argues that the information provided by the informant Garcia did not provide probable cause because Garcia had not been shown to be a reliable informant and because the People failed to demonstrate that the information conveyed was based upon Garcia’s personal knowledge or observation of defendant. He concludes that his conviction must be reversed and an order of suppression granted.
This case presents a question by now familiar to this court, to wit: whether and under what circumstances an informant’s tip may be relied upon by police officers to justify a warrantless arrest and search of a citizen. The standard to be applied in such cases is also familiar. Before the liberty of one of our citizens may be placed in jeopardy on the hearsay relation of another, it must be shown that the informant has some “basis of knowledge” from which *489 he could properly conclude that the subject of the tip was indeed involved in illegal activity and that the informant himself is reliable. (Aguilar v Texas, 378 US 108, 114.) It is our task upon this appeal to determine whether each of the components of this “two-prong test” have been satisfied.
We address ourselves first to the question whether the informant in this case can be considered to be “reliable” and conclude that he can be. To be considered “reliable”, an informant need not be a disinterested public-spirited citizen. The courts have long recognized that many police informants are not pillars of the community and many co-operate with the police only to curry favor with the authorities at a time when their own right to continued liberty is in peril. Indeed, the criminal record of an informant or the current predicament in which he finds himself within the criminal justice system does not necessarily render him unreliable. Neither, however, can we blithely accept as true the accusations of an informant unless some good reason for doing so has been established. Otherwise the liberty of each of us is at too great a risk. Thus, before the police can act upon the informant’s tale, they must be prepared to demonstrate that they had good reason to believe that this particular informant was telling the truth.
There is, of course, no one acid test of reliability. Over the years several factors have been considered by the courts to be adequate indicia of reliability. For example, an informant will be considered reliable if he has come forward with accurate information in the past. (Aguilar v Texas, 378 US 108, swpra.) He may also be considered reliable if he makes a statement under oath (People v Wheatman, 29 NY2d 337, 345) or where details of his story have been confirmed by police observation (People v Elwell, 50 NY2d 231, 237). It must be emphasized that the above-mentioned factors are merely illustrative and that no one factor is the sina qua non of reliability. In most cases, a combination of factors, considered together, lead the court to conclude that an informant is worthy of belief. So it is in this case.
Here, although Garcia had never before given information to police, there are other indicia of reliability in the record before us from which the courts below could properly *490 conclude that Garcia was reliable. First, the information given, by Garcia corresponded exactly with information already in the possession of the police. His tip was not limited to an accusation of defendant. Rather, it also included a “run-down” of at least seven other individuals. Much of the information in this part of the tip had already been confirmed by the police in their independent investigation. Thus, while Garcia had never come forward before, the police could at least assure themselves that much of what he said was accurate, for they already knew it to be true. (See United States v Canestri, 518 F2d 269, 272; People v Coffey, 12 NY2d 443, cert den 376 US 916.) Second, Garcia’s description of defendant with regard to his appearance and his mode of operation was also confirmed by the police. This, too, could properly be considered as evidence of Garcia’s veracity. (People v Elwell, 50 NY2d 231, 237, supra.)
Defendant makes much of the fact that Garcia was in custody at the time of his statement, noting that he may have been willing to offer any statement, even a false one, to better his own position. However, as we have noted, Garcia’s predicament is not necessarily an indicator of his unreliability. In fact, it may well have been a strong motivation for Garcia to tell the truth. In custody on serious charges, Garcia made his statement to assist his captors in uncovering the crime of another. He knew that the police would act upon it. He must also have known that sending the police on a fruitless errand would avail him of little, for this sport, too, could as easily become part of his record. Hence, he had every reason to tell all and tell it truthfully.
In short, the record contains ample evidence from which the courts below could have concluded that Garcia was a reliable informant. We see no reason, on the record before us, to disturb the holdings of the courts below on this issue.
Having determined that Garcia was a reliable informant, we must now examine the question whether the People have sufficiently demonstrated that he had personal knowledge of facts upon which he could properly base his accusation of defendant. In other words, we must determine if the remaining component — the so-called “basis of knowledge” test — of the two-prong Aguilar standard has been satisfied.
*491 Judicial inquiry into the factual basis of an informant’s tip is premised upon the notion that the relation of any informant, even a reliable one, is of little probative value if the informant has not himself witnessed the facts which he relates. In such a case, his personal credibility, which as we have noted must also be established, would be irrelevant, for he cannot personally stand behind the description of criminal activity which he gives. Moreover, if the tip of an otherwise reliable informant were accepted at face value, without inquiry into his “basis of knowledge”, the liberty of the subject of the tip could often be placed in jeopardy on the strength of mere rumor and suspicion. Inasmuch as the Constitution does not allow officers of the law in the normal course of their duty to base an arrest upon such slim authority, it would seem obvious that an informant’s tip, based upon equally insufficient grounds, cannot serve as the basis of a valid arrest. Thus, it has long been recognized that the police may not predicate a warrantless arrest upon an informant’s tip unless they are prepared to demonstrate that the informant had an adequate “basis of knowledge”. (Aguilar v Texas, 378 US 108, 114, supra; see, also, e.g., People v West, 44 NY2d 656, 657; People v Wirchansky, 41 NY2d 130, 131.)
In many cases, the basis of knowledge of an informant is established by his own testimony. If an informant carefully describes the underlying circumstances in which he obtained his information and his description of such circumstances clearly indicates that he speaks with personal knowledge of the event which he relates, the “basis of knowledge” requirement is satisfied. A much more difficult problem is presented where the informant does not specifically set forth the factual basis upon which his story rests.
One way of establishing an informant’s basis of knowledge in the absence of a clear statement by the informant of the source of his information has been through subsequent police verification of the details of the tip itself prior to making an arrest. Where the tip is extremely detailed, and the police verify by their own observation that the actions of the subject of the tip comport exactly with the prediction of the informant, it has been held in the *492 Federal courts that it is reasonable to infer that the informant had personal knowledge of the facts which he so accurately related. (Draper v United States, 358 US 307; see, also, Spinelli v United States, 393 US 410.)
This court has only recently discussed this method of establishing an informant’s “basis of knowledge” in People v Elwell (50 NY2d 231, supra). In the Elwell case, we examined the scope of the Federal rule as articulated in Draper and its progeny and noted that the cases which applied the rule in this State were not easily reconciliable. After a thorough review of the case law and the applicable constitutional provisions, a majority of this court decided that whatever the rule may be under the Federal Constitution (US Const, 4th Arndt), the parallel provision of our State Constitution (NY Const, art I, § 12) required a holding that a warrantless search or arrest “will be sustained only when the police observe conduct suggestive of, or directly involving, the criminal activity about which an informant who did not indicate the basis for his knowledge has given information to the police” (50 NY2d, at p 241.) Thus, in Elwell we held that where an informant gives none of the underlying facts concerning his acquisition of the incriminating information conveyed and no other evidence exists from which a court could properly infer a “basis of knowledge”, police observation of innocent activity will not suffice to validate the arrest.
Defendant, relying upon our decision in Elwell, notes that in the case before us, the only activity monitored by the police prior to his arrest was defendant’s approach to and exit from 73 Second Street and his use of a damaged 1965 Buick and argues that observation of such innocent activity cannot serve to verify the information in the tip. While defendant is correct in his conclusion that in light of the Elwell case such police verification is an insufficient base upon which to predicate a finding that Garcia spoke with personal knowledge of the facts which he related, this conclusion does not end our inquiry for there exists another independent base upon which such a finding could properly be made.
Even though the courts below could not properly infer a *493 “basis of knowledge” from police verification of defendant’s innocent acts, they could properly consider the detailed nature of Garcia’s statement with respect to the criminal activity he predicted as evidence to support the inference that Garcia spoke with personal knowledge. As we have only recently noted in Elwell, a warrantless arrest or search can be sustained not only where “conduct suggestive of, or directly involving, the criminal activity” is observed by police, but also where “the information furnished about the criminal activity is so detailed as to make clear that it must have been based on personal observation of that activity” (50 NY2d, at p 241; see, also, People v Hanlon, 36 NY2d 549, 557). Thus, where an informant’s tip describes a criminal enterprise in minute detail, the exactness of the language of the tip itself can serve to negate the inference that the informant is relying upon mere rumor or conjecture.
In this case, Garcia related the following information with respect to defendant Rodriguez: that Rodriguez was the manager of the Brown Social Club; that he supplied the club with heroin for sale to customers; that he owned a 1965 Buick and that the first three numbers on its license were 964; that the Buick was multicolored on the right side because of body damage; that Rodriguez went daily between 8:00 and 9:00 a.m. to an apartment on Second Street between First and Second Avenues to obtain heroin from a white male named “Jerry”, which Rodriguez would then deliver to the club; and that the heroin would be wrapped in multicolored packets which would in turn be wrapped in newspaper. The very existence of such detail in the tip could establish Garcia’s “basis of knowledge” and supports the inference that Garcia spoke with personal knowledge of the facts. Thus, on the basis of this detailed statement, the court below could properly conclude that Garcia had demonstrated to police an adequate “basis of knowledge”.
It must be remembered that the raison d’etre of all of the judicial tests which have been enunciated by the courts with respect to informants’ tips is to ensure that no arrest or search will be made without probable cause. We must not become so involved in the intricacies of judicial rule-making that we lose sight of this ultimate aim. Thus, the real ques *494 tion in this case is whether the officers who made the arrest in issue reasonably believed that defendant was committing a crime in their presence. This issue presents a mixed ques-ion of law and fact which is in most cases beyond the limited review powers of this court. (People v McRay, 51 NY2d 594, 601.) We have only recently noted that “where reasonable minds may differ as to the inference to be drawn from the established facts, this court, absent an error of law, will not disturb the findings of the Appellate Division and the suppression court”. (Id.) The record contains evidence from which the courts below could infer that the police had probable cause to arrest defendant and, more specifically, that Garcia spoke with personal knowledge of the facts in giving his detailed tip to police. Therefore, since we are unable to say as a matter of law that the record before us could not provide a legally sufficient base upon which to predicate such a factual finding, we can go no further.
Accordingly, the order of the Appellate Division should be affirmed.