THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v
GUILLERMO RESTREPO, Respondent.

First Department, June 15, 1982

### APPEARANCES OF COUNSEL

*Joyce P. Adolfsen* of counsel (*Norman Barclay* with her
on the brief; *Robert M. Morgenthau, District Attorney,*
attorney), for appellant.

*David E. Oltarsh* for respondent.

### OPINION OF THE COURT

BLOOM, J.

This case again confronts us with the vexatious problem
of when and whether the police may be justified in relying
upon hearsay evidence supplied by a confidential informer
whose reliability has been established to effect a warrant-
less search. The suppression court was of the opinion that
the stop and search of defendant was not constitutionally
justified and suppressed the evidence seized. We disagree.
Accordingly, we reverse and deny the motion to suppress
the weapon.

The Federal Drug Enforcement Agency (DEA) was investigating the drug activities of defendant, Jose Rojas, and others. In connection therewith they were working with a confidential informer who had, in his capacity as informer, made two prior buys of narcotics from Rojas, who resided at 1234 Castle Hill Avenue, Bronx, New York. In neither instance did Rojas possess the drug. He communicated the order to defendant who delivered the narcotics to him while the informer waited at the Rojas residence.

The investigation was under the general supervision of Drug Enforcement Agent William Rosenberger. On February 21, 1980, the confidential informant was instructed to go to the home of Rojas to make a buy of one kilo of cocaine. Prior to the arrival of the confidential informer, Drug Enforcement Agent Foster had the premises under surveillance. At about 6:15 P.M. he observed defendant and a woman enter the Castle Hill Avenue premises. Shortly thereafter he saw them depart. Foster conveyed the information to Rosenberger by way of radio and left to follow the two.

Rosenberger replaced Foster at the Castle Hill Avenue premises and continued the surveillance previously inaugurated. When he arrived he observed the automobile of the confidential informant parked in the vicinity. However, the informant was nowhere in sight. At about 6:45 P.M. Rosenberger saw the informant leave the Castle Hill Avenue premises and enter a telephone booth in the vicinity. Base radio then informed Rosenberger that the confidential informant was "on the line". The informant explained that he had placed the order with Rojas and had been told by him that "Luis", the name by which defendant was known both to the informant and the DEA, had left shortly before his arrival to obtain an eighth of a kilo of cocaine for another customer who was waiting for the delivery at a nearby bar and restaurant.

Following shortly upon this call, Agent Foster, who had tracked "Luis" to his home, informed Rosenberger by radio that he was with officers of the New York City Police Department who, as part of the over-all investigation, had had a location at 192nd Street and Broadway under surveillance, and that they had seen "Luis" enter premises at

192nd Street and Broadway. Rosenberger informed Foster and the city police officers that "Luis" was on his way to pick up and deliver one eighth of a kilo of cocaine. He then communicated the information received from Foster to base radio, which, in turn, directed Drug Enforcement Agent Spielsinger and Detective Daly, both of whom were staking out a third location in Brooklyn, to proceed to 192nd Street and Broadway. Some time thereafter "Luis" and a woman exited from 707 West 192nd Street. The woman was carrying a package. Detective Daly approached, gun drawn, and frisked "Luis", removing a loaded weapon from his waistband. A search of defendant's person did not reveal the presence of any narcotics. It is the seizure of this loaded weapon which is the subject of the suppression motion.

At the request of defense counsel the suppression court conducted an *in camera* examination of the confidential informant (*People v Darden,* 34 NY2d 177; cf. *People v Goggins,* 34 NY2d 163, which requires production of the informer in open court when the issue of guilt or innocence rather than probable cause is involved). The court's summary of the evidence adduced at that hearing is included in the record. It indicates that the informant was a registered confidential informant and that prior to the fall of 1979[1] he had been in the narcotics business. While so engaged he had purchased approximately 40 pounds of cocaine from defendant. On all occasions Rojas, who was known to the informant as "Cherrito" had acted as a middleman. He further testified that he had made an appointment to meet with Rojas at 6:00 P.M. on February 21, 1980. It was standard practice for Rojas, upon the arrival of the informant, to call the defendant at the defendant's home and place the order. Rojas would never place the order until the informant arrived at 1234 Castle Hill Avenue. Only after the order had been telephoned to defendant would defendant arrive with the drugs.

---

1. The confidential informant was arrested late in 1979. Shortly thereafter, and obviously in the hope of securing leniency for himself, he became a registered confidential informant. In that capacity he worked "daily" with Rosenberger. At the time of the hearing he had been instrumental in initiating six ongoing investigations and information supplied by him had led to convictions in the United States District Court for the Eastern District of New York.

On February 21, 1980, the informant arrived late for his appointment at the Castle Hill Avenue premises. Defendant, who had been there earlier, had already left. When the informant placed his order with Rojas, Rojas telephoned defendant. He then told the informant that defendant had left his home to deliver a one-eighth kilo of cocaine for another customer who was waiting for the delivery in the restaurant below.

The informant left and telephoned Rosenberger, via base radio, and communicated to him what had happened. The informant also told the suppression court that defendant subsequently acquainted him with the reason no narcotics had been found on his person at the time of the arrest. As a precaution, he was carrying the cocaine in his trouser leg. When he sensed that he was being followed he walked close to the curb, permitted the narcotics to slide down his trouser leg and kicked the package under a parked car. Although the police searched the area the narcotics were not found.

The suppression court was of the opinion that the reaffirmance of the *Aguilar-Spinelli* doctrine (*Aguilar v Texas,* 378 US 108; *Spinelli v United States,* 393 US 410) by the Court of Appeals in *People v Elwell* (50 NY2d 231), mandated suppression of the loaded gun. He concluded that the first prong of the two-pronged test set forth in *Elwell* — the reliability of the informant — had been met. However, he also concluded that the second prong — the basis of knowledge of the informant — was not founded on personal observation of the criminal conduct involved and was, therefore, insufficient. Accordingly, he held that suppression was warranted.

Nothing contained in *Aguilar* or *Elwell* (*supra*) mandates that the information furnished by the informant be the product of the informant's personal observation. Indeed, the law is clear that probable cause may be established by hearsay (*People v Brown,* 40 NY2d 183, 186; *Jones v United States,* 362 US 257, 269; *People v Hanlon,* 36 NY2d 549, 557). What is required is information of such quality, considering its source and the circumstances in which it came into possession of the informant, that a reasonable observer would be warranted in determining

that the basis of the informant's knowledge was such that it led logically to the conclusion that a crime had been or was about to be committed (*People v Hanlon,* 36 NY2d 549, *supra; People v Rodriguez,* 52 NY2d 483). The purpose is to separate street rumor and suspicion from information which is of such substance that it can be relied upon. It is to this end that the source of the informant's knowledge is required to be disclosed. "[T]he basis of knowledge test is, therefore, intended to weed out, as not of sufficient quality, data received by the informant from others who have not themselves observed facts suggestive of criminal activity" (*People v Elwell,* 50 NY2d 231, 237, *supra;* see, also, *People v Rodriguez,* 52 NY2d 483, 491, *supra; People v Wirchansky,* 41 NY2d 130, 135-136). Here, Rojas was a participant in the criminal activity described by him to informant. The statements in question were statements against his own penal interest (cf. *People v Maerling,* 46 NY2d 289; *People v Brown,* 40 NY2d 183). It is highly unlikely that he would have incriminated himself unless the statements were true and he believed that he was making them to someone who would not disclose them to the authorities.

The situation here presented is clearly distinguishable from those cases in which the arrest, and the search which followed, rested solely on uncorroborated tips conveyed to the police by an anonymous informer (cf. *People v Elwell,* 50 NY2d 231, *supra; People v Horowitz,* 21 NY2d 55; *People v Dinkins,* 76 AD2d 655). Nor was it bottomed solely on the conclusion of the informant, without a disclosure of the manner in which he came to acquire his knowledge (*People v West,* 44 NY2d 656; *People v Wirchansky,* 41 NY2d 130, *supra*). Here, there was more. There was the source of the information which came from a direct participant in the crime. There are the circumstances under which it was made, coupled with the belief that it was being conveyed to someone who was "safe". These are elements which required the suppression court to give the situation careful and substantial consideration in determining its reliability. When to this is added the contemporaneous police verification of facts related — the observation of "Luis" emerging from the Castle Hill Avenue address, his proceeding to his home and his emergence therefrom shortly

thereafter,[2] apparently to deliver the narcotics ordered, the picture is complete. The action of the subject of the information, verified by the observations of both the DEA and the police was such as to "comport exactly with the prediction of the informant" (*People v Rodriguez,* 52 NY2d 483, 491, *supra*). Under these circumstances, the reliability of the information furnished is sufficiently complete to warrant giving credence to it (*Draper v United States,* 358 US 307). Based upon the information and the circumstances in possession of the authorities, we conclude that the arrest and the consequent search were valid.

Accordingly, the order of the Supreme Court, New York County (DENZER, J.), entered December 18, 1980, suppressing the weapon, and the order entered January 19, 1981 (HAFT, J.), dismissing the indictment on the basis of the suppression order, should be reversed, on the law and the facts, the motion to suppress the weapon denied, the indictment reinstated, and the matter remanded for further proceedings.

KUPFERMAN, J. P., ROSS, LUPIANO and ASCH, JJ., concur.

Order, Supreme Court, New York County, entered on December 18, 1980, unanimously reversed, on the law and the facts, the motion to suppress the weapon denied, the indictment reinstated, and the matter remanded for further proceedings.

---

2. Concededly, this activity standing alone was as compatible with innocence as it was indicative of criminal activity (*People v Elwell,* 50 NY2d 231). However, it did not stand alone. It was part of a much larger canvas. Given the totality of the circumstances Detective Daly was warranted in concluding that a crime was being committed (*United States v Harris,* 403 US 573).