■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ANDRE FENNER, Appellant. — Appeal by defendant from a judgment of the Supreme Court, Kings County (Lentol, J.), rendered December 10, 1979, convicting him of murder in the second degree, manslaughter in the first degree, assault in the second degree, assault in the third degree and criminal possession of a weapon in the second degree, upon a jury verdict, and imposing sentence. The appeal brings up for review an order of the same court denying the defendant's motion to suppress certain evidence. Judgment affirmed. No opinion. Weinstein, J. P., Gulotta, and Rubin, JJ., concur.

O'Connor, J., dissents and votes to reverse the judgment, grant the suppression motion and order a new trial, with the following memorandum: At the *Huntley* hearing conducted pursuant to defense counsel's omnibus motion for suppression of "any and all statements [by defendant] on the grounds that said statements were taken in violation of his constitutional rights and while he was under serious physical and mental disabilities", Detective Robert Gadson testified to his homicide squad's investigation of the events of November 13, 1978 leading to the shooting death of one individual, the wounding of another and the arrest of defendant. In defendant's version, as related to the witness after the arrest, one of three males entering a poolroom together came up to defendant and accused him of burglarizing his house. Upon the accuser's pulling a pistol, defendant engaged him in a struggle for the weapon, which defendant apparently won; a second of the three males then stepped in to wrest control of the weapon from defendant. During the "tussl[e]", the weapon discharged three times without, said defendant, causing injury. At that point the three males ran away, leaving defendant alone in the poolroom with the manager. The prosecutor objected when defense counsel attempted to elicit from Gadson the basis for defendant's arrest at his girlfriend's residence by Detectives Leonard Rainey and Mack Ferguson. The suppression court asked the prosecutor if he expected to develop the probable cause issue, and the prosecutor stated that although the issue had not been raised to that point, he expected it to be raised. The court agreed that the issue had not yet been raised, but said it had done so itself because of the United States Supreme Court's decision in *Dunaway v New York* (442 US 200). The court, reasoning

that *Dunaway* made probable cause an issue in every *Huntley* hearing, ruled that defense counsel could properly seek such hearsay testimony from the witness (see CPL 710.60, subd 4). The witness testified that the arresting officers had acted on information supplied them from a source unknown to the witness to the effect that the assailant of the two victims had been a person named Andre and that this person was to be found at a specified address. He could not recall if anyone had identified the defendant to him personally as the perpetrator. Detective Rainey testified that he had responded to the scene of the crime about 15 or 20 minutes after it had occurred and spoke only with a police officer named Gatti or Gatty. This officer, who was not called to testify, told the witness that he had been informed by a "young lady" that one Andre had done the shooting and might be found at his girlfriend's residence at the address specified. On cross-examination it was elicited that the witness was never informed of the informant's identification or her source of information linking defendant to the crime. With the limited information given them by the officer, the witness and his partner drove to the address, a two-family house. After speaking to an occupant of the first-floor apartment who suggested that the person named by the detectives might be upstairs, the witness rang the upstairs bell and was addressed by a woman who, after the witness identified himself, denied that defendant was there. Upon being told what had occurred in the poolroom, however, the woman admitted that defendant was in the upstairs apartment and was "very upset" and "afraid". The witness instructed her to inform defendant that he should come downstairs with his hands up and that the officers would not harm him; she ascended the stairs and reappeared at the top of the staircase with defendant. The witness, whose information was that defendant had fled from the crime scene with the gun still in his possession, drew his gun and held it behind·him and ordered defendant to raise his hands and walk downstairs slowly. Defendant complied. The witness interrupted defendant's apparent attempt to speak in order to recite to him his rights from memory and then asked defendant what had transpired in the poolroom. Defendant told him he had been in a fight with two "dudes", one of whom had pulled a gun that went off; defendant then fled, tossing the gun into a vacant building en route to his girlfriend's residence. The witness recalled these details without refreshing his recollection from notes, which he had not taken; however, he had discussed with the prosecutor the contents of Detective Gadson's typed notes recording the defendant's statement made to Gadson. The witness added that his brief search of the building failed to locate the weapon. The witness' partner, Detective Ferguson, testified to the same effect upon being called by defense counsel. He specified that their information about the defendant had come from Gatty, but said he had not heard the statement given his partner by defendant. Defense counsel explicitly moved at the conclusion of the testimony to suppress the postarrest statements on the ground that the prosecutor had failed to produce Gatty to indicate the basis, if any, for the informant's belief that defendant had been the assailant, and had accordingly failed to prove probable cause for defendant's arrest at his girlfriend's residence.[*] The prosecutor, pointing out that this

---

[*] The record shows that defense counsel stated: "Your Honor, my motion is brief, and based upon the fact that apparently without any further testimony coming from the People on this point, apparently from Detective Rainey and Detective Ferguson, a Police Officer Gatty spoke to an unidentified woman, *a woman I don't even know was inside of the location at the time of the incident, who I don't even believe is a witness to the incident,* and based upon that sketchy information, Police Officer Gatty directed Detective Rainey and Detective Ferguson to a location * * * and upon arriving at that location, the detectives apprehended Andre Fenner [defendant], and arrested Andre Fenner without

argument as expressed by defense counsel did not expressly relate the lack of probable cause to the voluntariness of the statements, nevertheless addressed the merits of the motion as thus framed and argued that the information had been sufficiently specific and confirmed at the girlfriend's residence so as to meet the probable cause requirement. The prosecutor did not address the issue of the reliability of the informant's information and did not seek leave to introduce further evidence relevant to that issue. Likewise, the suppression court ruled on the merits of the motion as articulated by defense counsel without making specific reference to the source of the tip leading to defendant's arrest; further, the court ruled that the statements had been voluntarily made after a knowing waiver of his rights. The Court of Appeals ruled in *People v Jenkins* (47 NY2d 722) that a defendant waives his challenge to the reliability of evidence relevant to probable cause if he does not raise the issue explicitly enough to put the People on notice that they can no longer rely on the presumption of probable cause and must introduce evidence demonstrating its existence in the particular case. I believe the record in this case clearly shows that the attention of the prosecutor had been duly drawn to the issue of the reliability of the informant's information and therefore I conclude that it was incumbent on the prosecutor to make some evidentiary showing not only of the existence of an informant and of her statement, subsequently confirmed, detailing defendant's identity and whereabouts, but also of the source of the informant's belief that defendant — rather than someone else — had been involved in the shooting. Failing to produce any evidence whatsoever to establish this necessary element of probable cause when given the opportunity to do so, the People did not meet their burden of proving probable cause for defendant's arrest and the statements must be suppressed as a matter of law (see *People v Bouton,* 50 NY2d 130, 136; *People v Elwell,* 50 NY2d 231; *People v Petro,* 83 AD2d 566; *People v Pittman,* 83 AD2d 870; *People v Delgado,* 79 AD2d 976). Upon this well-established principle of law, I must dissent and vote to reverse the judgment, grant the motion to suppress the statements and order a new trial.

any probable cause to do so, other than he identified himself as Andre, and that they were looking for someone named Andre." (Emphasis supplied).