■ THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v RAPHAEL MATEO, Respondent. — Order of the Supreme Court, New York County, entered December 4, 1981 (S. Schwartz, J.), which granted defendant's motion to suppress, and entered December 11, 1981 (Haft, J.), which dismissed the indictment, are reversed, on the law and on the facts, the suppression motion is denied, and the indictment is reinstated. On the morning of August 13, 1980, Detective Thomas Armet (Armet) was investigating a shooting in the vicinity of Kenmore and Elizabeth Streets, Manhattan, an area known for its narcotic activity. As a result of his investigation, Armet arrived at 166 Elizabeth Street. In the first floor hallway of this building, Armet met a man whom he had known for several years. This person pointed to an empty red Ford Torino that was parked across the street and told Armet that it was used to bring narcotics to apartment 4D of 166 Elizabeth Street for packaging. Armet searched apartment 4D and found two loaded guns, 165 packets of cocaine and some other narcotics. About an hour later, when Armet came out of the building, he saw the defendant, who was seated in the driver's seat of the red Ford Torino, trying to start the car. Based upon the information supplied to him by the citizen informant about this vehicle's use in the drug traffic, Armet decided to question the defendant. The detective requested defendant to get out of the vehicle and defendant complied. As a result of defendant exiting the car, the door was left open. Then, Armet, seeking to ascertain whether defendant was trying to start the ignition by key or by jumping the wires, leaned into the car to observe the ignition. He observed, a few inches from where defendant had been sitting, a brown vinyl bag resting on the front seat, with one compartment broken so that it could not be zippered shut. In plain view in this broken compartment was a large glassine envelope. Armet unzipped the

other compartments and in one he found a smaller glassine envelope with marihuana, and in the other he found a loaded .38 calibre revolver. The defendant was arrested and subsequently indicted. Even though the hearing court found the citizen informant reliable as to the fact that apartment 4D was involved in the narcotic trade, it did not find reliable his information that the red Ford Torino was used to deliver narcotics to that apartment, since the informant did not reveal how he knew that this automobile was being so used. Therefore, the hearing court held that Armet did not have probable cause to search this vehicle. We disagree. In view of the fact that the citizen informant was not anonymous, but was present conversing with the officer, and that Armet had confirmed details of this informant's information by his discovery of criminal activity in apartment 4D, we hold that Armet had probable cause to search the red Ford Torino, which the informant claimed was used to furnish narcotics to apartment 4D (*People v Elwell*, 50 NY2d 231, 236-237; *People v Rodriguez*, 52 NY2d 483, 491-493). Not to be overlooked in the instant case is that Armet did not force an entry into the vehicle. In our view, Armet's "intrusion * * * was so minimal as not to be disportionate to the situation" (*People v Simmons,* 83 AD2d 79, 80). Concur — Ross, J. P., Asch and Alexander, JJ.

Milonas, J., dissents in a memorandum as follows: In my opinion, the order being appealed herein should be affirmed. As determined by the hearing court, the facts are as follows: On the morning of August 13, 1980, Detective Thomas Armet received a radio report that a man had been shot on the corner of Kenmore and Elizabeth Streets in Manhattan. He proceeded to that location and there discovered an injured man. Further inquiry took Detective Armet to 166 Elizabeth Street where he spoke to a neighborhood man with whom he was acquainted. The informant stated that apartment 4D was utilized for the packaging of narcotics and that a red Ford Torino, then unoccupied and parked across the street, was involved in delivering the drugs. The detective thereupon went to the apartment and conducted a search, recovering two loaded handguns and a quantity of cocaine. He subsequently arrested the injured man for possession of the contraband. Approximately one hour and 15 minutes later, as Detective Armet was leaving the building, he observed the defendant behind the wheel of the Ford Torino. The defendant appeared to be engaged in starting up the vehicle. Detective Armet, deciding to investigate, approached the driver's side of the car, identified himself and requested that the defendant step out. The defendant complied, whereupon Detective Armet "leaned in[to]" the automobile with the "top part" of his body to determine if the defendant was going to start the ignition with a key or by jumping the wires. As he was doing this, he happened to notice a brown vinyl bag on the front seat to the right of where the defendant had been sitting. One of the compartments of the bag was purportedly open, the zipper being broken. Inside was a glass jar containing a glassine envelope filled with marihuana. Detective Armet then searched the rest of the bag and found more marihuana, as well as a loaded revolver. Following the hearing in connection with the motion to suppress, the court, while generally accepting the testimony of Detective Armet, determined that when he placed his "torso" in the automobile, his purpose was to conduct a search rather than simply to examine the ignition. The court held moreover that the informant, although reliable since he had supplied accurate information concerning the activities in apartment 4D, had failed "to detail or explain the basis of his conclusion that the red Torino Ford automobile had been used in delivering drugs to the apartment. There was no police activity in surveillance of the automobile or otherwise to demonstrate that the automobile was engaged in the illegal drug traffic." Accordingly, the court granted defendant's

motion to suppress the evidence found in the car. In *People v Rodriguez* (52 NY2d 483, 488-489), the Court of Appeals declared that: "Before the liberty of one of our citizens may be placed in jeopardy on the hearsay relation of another, it must be shown that the informant has some 'basis of knowledge' from which he could properly conclude that the subject of the tip was indeed involved in illegal activity and that the informant himself is reliable. (*Aguilar v Texas,* 378 US 108, 114.) It is our task upon this appeal to determine whether each of the components of this 'two-prong test' have been satisfied." The majority has decided that the discovery of criminal activity in apartment 4D confirmed the details of the informant's information and, thus, provided probable cause for the search of the automobile. However, the fact that the informant's statements may have been correct with regard to the apartment in no way justifies a warrantless search of the vehicle where there is no "basis of knowledge" that the car itself was used in connection with illegal activity. The source of the informant's information remains unknown, and Detective Armet made no independent observations to corroborate the tip which he had received concerning the Ford Torino. More significantly, the majority ignore completely the clear constitutional dictates surrounding a warrantless search. The United States Supreme Court has consistently taken the position that searches conducted without the prior approval of a Judge or magistrate are per se unreasonable unless they fall within one of the few specifically recognized exceptions. (*Katz v United States,* 389 US 347; see, also, *Mincey v Arizona,* 437 US 385; *Colorado v Bannister,* 449 US 1; *New York v Belton,* 453 US 454.) A warrantless search is permitted only under the following circumstances: where there are exigent circumstances present (*McDonald v United States,* 335 US 451); where there is a danger of the imminent destruction of evidence (*Schmerber v California,* 384 US 757); where the police are in "hot pursuit" of a fleeing suspect (*Warden v Hayden,* 387 US 294); as incident to a lawful arrest, the person of the suspect and the area within his immediate control may be searched (*Chimel v California,* 395 US 752); and when an automobile or other vehicle is stopped and the police have probable cause to believe it contains evidence of a crime (*Arkansas v Sanders,* 442 US 753). In the instant case, there were no exigent circumstances such as would support a departure from the requirement of a warrant, nor are any of the other exceptions, particularly that relating to automobiles, applicable to the present situation. In *People v Belton* (55 NY2d 49, 55), the Court of Appeals held that the police may search only the passenger compartment of a car (including any containers found therein) where they "have validly arrested an occupant of an automobile, and they have reason to believe that the car may contain evidence related to the crime for which the occupant was arrested or that a weapon may be discovered or a means of escape thwarted". Detective Armet certainly had no probable cause to arrest defendant prior to the search of the vehicle. A search is, or is not, legal at its inception, and the fruits of an illegal search do not give rise to the probable cause necessary to permit a valid arrest. (See *Whiteley v Warden,* 401 US 560; *Bumper v North Carolina,* 391 US 543; *Wong Sun v United States,* 371 US 471; *Miller v United States,* 357 US 301.) If Detective Armet had reason to believe that as a result of the defendant's being "hunched over" the dashboard, he might be endeavoring to steal the car, it would have been a simple enough matter for the police officer to verify ownership by requesting that the defendant produce a license and registration. Inexplicably, he failed to take such an obvious step. In fact, according to Detective Armet's own testimony, his ostensible purpose in approaching the defendant in the first place was: "Because I had a man shot, my original intention was to question the occupant of the car to see if he could help me in the investigation of the

man shot." At no time did Detective Armet claim that he intended to pursue the narcotics angle. By sanctioning Detective Armet's search of the vehicle, the majority is proceeding as though there were no meaningful distinction between a search undertaken pursuant to a warrant and one conducted without a warrant. In so doing, it is not only disregarding a whole line of United States Supreme Court and New York State authority which has established well-delineated standards with respect to warrantless searches, but is also expanding the automobile exception well beyond its existing boundaries.