OPINION OF THE COURT
Saverio J. Fierro, J.
Before the court is an application by a child protective services worker of the Suffolk County Department of Social Services for an order pursuant to section 1034 of the Family Court Act authorizing the search of certain premises to determine whether an abused or neglected child is present. The within motion was made on notice to the alleged perpetrator of the abuse (hereinafter referred to as the respondent) and to the Law Guardian. The Law Guardian joins in the application for the order, while the respondent opposes it.
The following is a synopsis of the relevant factual circumstances which led to the instant application as gleaned from the supporting and opposing documents. On November 17, 1982, the State central register hotline in Albany received a telephone report from a “VIES” worker alleging excessive corporal punishment and inadequate guardianship by a Joe Ocario in reference to his six-year-old son. *405 The worker stated that she had received information over the telephone from a Mrs. Ocario that her angry husband, while under the influence of alcohol, punched his son in the stomach several times and threw a coffee table at him. When it was suggested to her by the “VIES” worker, the mother refused to report the incident to Albany. The supporting affidavit alleges that the “Marcarios” declined to co-operate in an investigation by the child protective services via telephone or by a home visit. Instead, the Marcarios contacted their attorney and placed the matter in his hands. Affidavits submitted by both Mr. and Mrs. Joseph Marcario deny any of the alleged mistreatment. Indeed, Mrs. Marcario’s affidavit states that she informed the Department of Social Services that she had never made such a telephone call.
Most importantly, the court notes that the documents substantiate that, although the child abuse report was made on November 17,1982, the application for an order to conduct a search was filed with the court on March 2,1983, more than three months later.
Article 10 of the Family Court Act sets forth the procedure by which this court must be guided in child protective proceedings. Section 1011 of the Family Court Act states the purpose of child protective proceedings to be to “establish procedures to help protect children from injury or mistreatment and to help safeguard their physical, mental and emotional well-being. It is designed to provide a due process of law for determining when the state, through its family court, may intervene against the wishes of a parent on behalf of a child so that his needs are properly met.”
Douglas J. Besharov in his Practice Commentary to section 1011 of the Family Court Act (McKinney’s Cons Laws of NY, Book 29A, Family Ct Act, § 1011, 1976-1982 Supp Pamph, p 449) states that when the State “intervenes to protect a child without the full consent of parents, it must do so with due regard to the rights of parents as well as the needs of children * * * Article 10 does not authorize coercive intervention into family life unless there is sufficient reason to believe that child abuse or child neglect exists.”’
*406 Indeed, subdivision 2 of section 1034 specifically provides that due process be accorded to alleged perpetrators of abuse: “Where there is probable cause to believe that an abused or neglected child may be found on premises, an order under this section may authorize a person conducting the child protective investigation, accompanied by a police officer, to enter the premises to determine whether such a child is present. The standard of proof and procedure for such an authorization shall be the same as for a search warrant under the criminal procedure law” (emphasis supplied). The court notes that the decisional law of New York State is devoid of cases construing section 1034 of the Family Court Act and thus treats this as a case of first impression.
CPL 690.35 sets forth the requirements for an application for a search warrant. As it pertains to the instant matter, it must contain allegations of fact supporting a statement that there is reasonable cause to believe that a neglected or abused child will be found on the premises proposed to be searched. Such allegations must be based upon the personal knowledge of the applicant or upon information and belief where the sources of such information and the grounds of such belief are stated.
In concluding that the supporting affidavit is clearly insufficient to warrant a search, this court is evermindful that warrant applications should not be read in a hyper-technical manner, but that they must be considered in light of everyday experiences and accorded all reasonable inferences. (See People v Hanlon, 36 NY2d 549.) Keeping in mind the function of protecting children from mistreatment, it is the duty of this court to perform its function in a neutral and detached manner and not to serve as a “rubber stamp” for the authorities. (Aguilar v State of Texas, 378 US 108.)
By enacting article 10 of the Family Court Act and especially section 1034, the Legislature has made clear its intent that a suspect in a child abuse or child neglect case be afforded the same protections of due process as a suspect in a criminal matter. Indeed, the protection guaranteed by the Fourth Amendment of the United States Constitution and section 12 of article I of the New York State Constitu *407 tion is not to be forgotten: “The right of people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.”
Certainly, with the above constitutional and statutory analysis in mind, an examination of the supporting affidavit in the case at bar reveals a scanty factual pattern that does not approach the requisite elements of probable cause. The court is forced to conclude that the affidavit is based entirely on hearsay in its worst form. The supporting allegations are not within the personal knowledge of the affiant. Instead, the application rests totally on the information of an unnamed informant whose own knowledge is woefully deficient. In the main, the affidavit that is proffered as the basis for the issuance of the proposed order is based on double hearsay of the “VIES” worker and the purported Mrs. Ocario.
It is well settled that where an affidavit in support of a warrant relies on hearsay supplied by an informant, it must be measured by the two-pronged Aguilar test. The first prong constitutes the “veracity” test where it must be established that the informant is in fact reliable. The second prong is the “basis of knowledge” test where the underlying circumstances as to how the informant got his information must demonstrate a sufficient probability of credibility to allow a search. (People v Loewel, 50 AD2d 483, affd 41 NY2d 609; Aguilar v State of Texas, 378 US 108, supra.)
In reference to Aguilar’s first-prong veracity test, the application fails to identify the informant or to supply a buttressing affidavit from the “VIES” worker. Accordingly, the court has before it no information from which it might conclude that the informant is indeed reliable or credible.
As to the “basis of knowledge” prong of the Aguilar test, the underlying circumstances as to how the informant obtained the information provides absolutely no indicia of reliability. Although the worker reported that the alleged *408 abuser and his wife are named Ocario, the people who are under investigation are named Marcario. The informant’s source is not personal knowledge but hearsay related to her via a telephone conversation. Finally, the informant does not name or physically describe the victim of the purported abuse or even cite a date for the incident of the alleged abuse. Based on the information presented, this court has no recourse but to conclude .that the affidavit is insufficient in complying with the specific requirements necessary for a search warrant to issue.
Moreover, the court finds that the Marcarios’ failure to co-operate in the investigation by child protective services has no relevance to the issue of probable cause. The fact that Mrs. Marcario in a sworn statement denies the mistreatment or even making the call to the “VIES” worker, only detracts from the reliability of the worker’s investigation.
The applicant in his supporting papers asserts that the “VIES” worker is a mandated reporter; however, the court is cognizant of section 413 of the Social Services Law. That section specifically mandates a worker to make a report where he has reasonable cause to believe “that a child coming before.* * * [him] in * * * [his] professional or official capacity is an abused or maltreated child”. Clearly, in the case at bar, the worker never met the child or had an opportunity to observe him personally. The information learned from an informant is not probative where he himself has not witnessed the facts which he relates. (People v Rodriquez, 52 NY2d 483.)
Finally, and most importantly, this court is concerned with the over 90-day delay by the Department of Social Services in making the instant application for an authorization to search the premises of private citizens. The conclusion is irresistible that if there was a real concern for the child’s welfare on the part of child protective services, a more fully developed application would have been made immediately upon learning of the purported abuse. In order for the granting of such extraordinary relief to be *409 warranted, any such application should have been made while the information was fresh.*
After having granted the applicant all reasonable inferences in this matter, the court concludes that the supporting affidavit does not even come close to establishing the requisite elements of probable cause to justify an intrusion upon the respondent’s home. Accordingly, the application is hereby denied.

 Legislation has been introduced in the 1983-1984 regular session of the New York State Legislature which would provide the impetus for the proper authorities to take prompt action where it is believed that a child’s physical or emotional welfare is endangered. The bill is assigned Senate number 2165 and Assembly number 2820. The proposed legislation would require child .protective services or an appropriate child welfare agency to observe the child named in a child abuse report within three working days following receipt of such a report. If the representative of the child protective services is refused permission to observe the child, he must apply for an order pursuant to subdivision 2 of section 1034 of the Family Court Act forthwith.