OPINION OF THE COURT
Hancock, Jr., J.
 Based on information provided by an identified person, the police stopped the car defendant was driving, arrested defendant and a passenger, and seized cocaine found inside the car. The issue here is whether the veracity component of the Aguilar/Spinelli test for the adequacy of probable cause may — as indicated in People v Elwell (50 NY2d 231) — be satisfied by police corroboration of details that are not, if taken separately, suggestive of criminal activity. We hold that, in this case, the informant’s veracity was established by such details. The order of the Appellate Division should, therefore, be affirmed.
I.
On his own initiative, the informant, Timothy Thompson, told a Genesse County Deputy Sheriff that Johnny Lee Shannon was selling cocaine. He gave the information directly to the police in a face-to-face meeting at the station house. Thompson had never previously acted as an informant for a police agency and, even though he was on probation and had sought help from the police in gaining admission to a drug treatment program, there is no indication that he was under any immediate or future threat of being charged with violating his probation. The Deputy gave Thompson $200 in police "buy” money and drove him to Shannon’s house so that he could make a controlled "buy”. Although he dropped Thompson off around the corner from Shannon’s house, the Deputy did not see him enter or leave it. Thompson was gone for about four minutes and, upon his return, said that Shannon had taken the money. The Deputy searched him and confirmed the fact that he no longer had the $200.
According to Thompson, Shannon was going to Rochester to *696 pick up cocaine; he would drive a white Chevrolet Impala, which the Deputy had seen in Shannon’s driveway in Batavia; he would travel east to Rochester and return via Route 490; and Shannon would meet Thompson to deliver his order of cocaine in about 1 hour and 45 minutes at a specified address on Dublin Road in Bergen, a town just off Route 490, a few miles west of Rochester. Police observers soon reported that the white Chevrolet Impala had left Shannon’s driveway. A few minutes later, the police located the car on College Road in Batavia heading east toward Route 490 with Shannon in the passenger seat and defendant driving. Defendant and Shannon entered Route 490 and proceeded east toward Rochester. Approximately one and a half hours later, they reappeared traveling west on Route 490. The police stopped the car on the Route 490 exit ramp leading to Bergen, arrested both occupants, and seized the cocaine which they found inside.
Defendant moved to suppress the evidence found in the car based on lack of probable cause for the warrantless arrest. After the trial court denied the motion, defendant pleaded guilty to criminal possession of a controlled substance in the fifth degree. The Appellate Division affirmed the conviction, holding that probable cause existed for the arrest based on the information provided by Thompson and that the police had corroborated sufficient details of Thompson’s information to ensure its reliability. Two Justices dissented, arguing that corroboration by the noncriminal activities observed did not to establish the reliability of Thompson’s information.
II.
Probable cause for a warrantless arrest may be based on hearsay information, but only upon a showing that both the basis of knowledge and veracity components of the Aguilar/ Spinelli test have been met (see, Aguilar v Texas, 378 US 108; Spinelli v United States, 393 US 410; People Johnson, 66 NY2d 398, 402; People v Landy, 59 NY2d 369, 375).[1] Only the veracity component of the test is at issue here. That component relates to the validity of the information and requires a *697 showing either that the informant is credible and that the information supplied may, for that reason, be accepted as true or, in the absence of such showing, that the specific information given is reliable (see, Spinelli, supra, at 415-416; Johnson, supra, at 402; Stanley v State, 19 Md App 507, 313 A2d 847, 863 [Ct Spec Apps 1974]; see also, 1 LaFave, Search and Seizure: A Treatise on the Fourth Amendment § 3.3 [a], at 613 [2d ed 1987]). The separate basis of knowledge and veracity requirements of Aguilar/Spinelli are analytically independent and each must be satisfied (see, Johnson, supra, at 402-403; see also, United States v Harris, 403 US 573, 592 [Harlan, J., dissenting]).
Here, the People seek to satisfy the veracity requirement of Aguilar/Spinelli not by focusing on the informant or his propensity for truth telling, but by establishing the reliability of the particular information provided by the informant.[2] They contend that this may be done by corroboration through independent verification of sufficient details of that information, despite the fact that, analyzed separately, these details do not evince criminality. The People argue that permitting satisfaction of the veracity requirement with such corroboration can meet the concern for individual liberty necessarily involved in a warrantless arrest based on hearsay information from a known informant. We agree.
In People v Elwell (50 NY2d 231, supra), this Court emphasized that while the basis of knowledge for the informant’s tip may, in a proper case, be "corroborated” through details, it can only be done if the details are sufficient in number and suggestive of or directly related to criminal activities (id., at 236). The question here is whether this same insistence that the "corroborated” details evince criminality is a necessary and appropriate requirement when the veracity component of the Aguilar/Spinelli test is being satisfied by independent verification of the informant’s tip. We hold that such insistence is not necessary. This conclusion is justified by the conceptual and functional differences between the basis of knowledge and veracity components.
"Corroboration”, as the word is used when the informant’s *698 basis of knowledge is established from the informant’s statement alone is, in the true sense of the term, not corroboration at all; it is, in actuality, nothing more than the effect or impression on the arresting officer or issuing Magistrate created by the accumulation and quality of details in the information furnished by the informant (see, Spinelli, supra, at 416-417; see also, Kamisar, Gates, "Probable Cause,” "Good Faith, ” and Beyond, 69 Iowa L Rev 551, 557-558 [1984]). Such details, if they are sufficient in number and possess the proper specificity, can "corroborate” or "self-verify” the basis for the informant’s data by demonstrating that the informant must have obtained the information from firsthand observation or intimate knowledge of the criminal enterprise (see, Spinelli, supra).[3] For the veracity component, on the other hand, "corroboration” by verification of details is the traditional sort of independent corroboration by the police in checking out the truth of the informant’s tip through information obtained from a source other than the informant’s statement (see, Stanley, 313 A2d, at 862-863, supra; see also, Kamisar, op. cit., at 557-558).
The protections provided by the two components of the Aguilar/Spinelli test also differ. The purpose of the basis of knowledge inquiry is the assurance that the informant’s tip does not reflect inaccurate information or rumor. When the police or issuing Magistrates ground their acceptance of the informant’s basis of knowledge on the quantity and nature of the details in the informant’s statement their judgment is being made solely — and without other confirmation — on an analysis of the data the informant supplied and the words used. It is reasonable, in that situation, to require that at least some of the details in the informant’s statement be of criminal activities showing that the source had firsthand knowledge of the criminal endeavor.
In contrast to this method of "corroboration” through "self-verification”, often used to establish the basis of knowledge, the protection provided by the veracity component is the assurance that the informant is worthy of belief or that the information is reliable. Part of this assurance, of course, necessarily depends on an evaluation of the behavior and *699 manner of the informant and the plausibility of his statement. But the principal assurance is furnished by corroboration of the statement through a factor independent of the statement’s contents — i.e., the conclusion by the police from their own separate investigation that significant details of the information provided have been verified as accurate. The theory is that if significant details have been verified as true it is reasonable to suppose that other details, which remain unverified, are also true.
It is possible, of course, that an ill-willed informant attempting to implicate or vilify an innocent person could provide a few accurate but innocuous details of someone’s expected activities in order to give the report the appearance of reliability (see, Mather, The Informer’s Tip as Probable Cause for Search or Arrest, 54 Cornell L Rev 958, 967-968 [1969] [citing Harney and Cross, The Informer in Law Enforcement, at 33-37 (1962)]). Thus, to be sufficient corroboration, the independently verified details, although not of themselves criminal in nature, may not be merely peripheral to the reported criminal scheme; they must fit within the informant’s story of the contemplated crime as activities which are significant and essential to carrying it out (see, Mather, op. cit., at 967-968 [citing Spinelli, supra, at 417-418]). Corroboration by such noncriminal details, particularly where known informants have given the tip to authorities on their own initiative, we believe, will adequately protect the rights of the suspect by guarding against "the informant’s guile, gregariousness or gullibility [which] may cause him to pass on unreliable or even deliberately false information” (Elwell, supra, at 237).
Accordingly, we hold that the veracity prong of the Aguilar/Spinelli test may, in a proper case, be established through corroboration where the police have verified only noncriminal details of activity referred to in the informant’s statement. In Elwell we indicated that the reliability of the information provided, as distinguished from the basis of knowledge, could "be corroborated by details concerning dress, mannerisms, route or conveyance to be used by the subject of the information, which in themselves are wholly unsuggestive of crime” (Elwell, supra, at 237). This holding accords with decisions of other States (see, e.g., State v Jones, 706 P2d 317 [Alaska 1985]; State v Kimbro, 197 Conn 219, 496 A2d 498 [1985]; see generally, 1 LaFave, op. cit., § 3.3 [f], at 682-683).
*700 III.
In this case, the informant, Thompson, provided information directly to the police on his own initiative in a face-to-face meeting at the station house, giving the police an opportunity to judge his demeanor and evaluate his story. Although he was on probation, Thompson was under no threat of criminal prosecution. The police were able to verify several significant details of Thompson’s story which, although noncriminal if taken separately, when viewed collectively are strongly suggestive of the crucial fact — that Shannon had made the planned purchase of drugs in Rochester.
Thompson had told the police that Shannon was going to Rochester from Batavia to buy drugs, that he had promised to buy drugs for Thompson with the $200, and that he had agreed to deliver the drugs at a specified location in Bergen approximately 1 hour and 45 minutes later. The heart of the criminal enterprise was, of course, the trip to Rochester where the drugs were to be purchased. As to this essential element, Thompson gave the police the following details which they verified through personal observation: (1) Shannon would be driving a white Chevrolet Impala; (2) the car would proceed from Shannon’s house to Route 490; (3) Shannon would drive onto Route 490 east toward Rochester; (4) he would return on Route 490 west; (5) the trip from Batavia to Rochester and back to Bergen where the delivery was to be made would take about 1 hour and 45 minutes.
That Shannon traveled east on Route 490 toward Rochester and returned on Route 490 west to the Bergen exit within the time it would take to travel to Rochester, make a short stop and get back to Bergen certainly suggests that Shannon traveled to Rochester on some mission and returned without delay. To be sure, the Deputy’s belief in the truth of the critical fact — that the purpose of the mission was to purchase drugs — must ultimately depend on Thompson’s veracity. Additional facts observed by the police point to the criminal purpose of the mission: that Thompson no longer had the $200 which he stated he had given to Shannon, that Shannon’s car was stopped on the Bergen exit of Route 490 west, and that Shannon had returned on Route 490 west to the Bergen exit soon enough to make the prospective delivery to Thompson at the appointed time. We believe, under these circumstances, that the police had sufficient independent verification to satisfy the veracity component of Aguilar/Spinelli. *701 Inasmuch as Thompson’s basis of knowledge is not questioned, the police had probable cause for the warrantless arrest of defendant.
Accordingly, the order of the Appellate Division should be affirmed.
Acting Chief Judge Simons and Judges Kaye, Titone, Bellacosa and Smith concur.
Order affirmed.

. This Court, as a matter of State constitutional law, adheres to the Aguilar/Spinelli test and has expressly rejected the less protective "totality of the circumstances” standard which the United States Supreme Court adopted in Illinois v Gates (462 US 213) in lieu of Aguilar/Spinelli (see, People v Bigelow, 66 NY2d 417, 424-426; Johnson, supra, at 405-407).

. Alternatively, the veracity component may be met by showing that the informant was credible because he had a "track-record”; gave information against his penal interest; or furnished information while under oath (see, People v Johnson, supra, at 403; People v Rodriguez, 52 NY2d 483). None of these methods was used here.

. "Self-verification” is not the only method for establishing the informant’s basis of knowledge. As indicated in Elwell (supra, at 237), this can also be established by independent police verification of criminal details provided by the informant.