OPINION OF THE COURT
 

 Titone, J.
 

 Defendants were arrested by an FBI agent who discovered them unloading a truck containing stolen merchandise. The sole issue presented in their appeal from an Appellate Division order denying suppression is whether the People may refuse to comply with a trial court’s order to produce a confidential informant for a
 
 Darden
 
 inquiry
 
 [1]
 
 on the ground that the agent obtained enough confirmatory information through his own observations to justify a finding of probable cause. We conclude that the exception the People seek represents an unwarranted circumvention of the
 
 Darden
 
 rule and its salutary goals. Accordingly, we hold that, notwithstanding the arresting authorities’ own observations of criminality, the People were obliged to either produce their informant or forfeit the resulting evidence.
 

 In early October 1989, the Samsonite Corporation reported to the FBI that some 589 cartons of luggage, marked "Samsonite, Stratford, Ontario” and "Made in Korea,” had recently been stolen from a parked truck located in North Plainfield, New Jersey. On October 18, 1989, the Newark office of the FBI
 
 *632
 
 notified Special Agent Wright of the New York office of the theft and told him that a confidential informant had stated that the stolen luggage could be found on a Ryder rental truck parked at 527 East 86th Street in Brooklyn.
 

 Within a few hours of receiving that information, Agent Wright drove to the specified Brooklyn address and observed a Ryder truck parked in the driveway. After conducting a three-hour surveillance, Wright saw a second Ryder truck, driven by defendant Anthony Grado, arrive and park nearby. Wright watched as Grado entered the truck in the driveway. He also watched as a car pulled up onto the driveway and its driver alit to join Grado in his truck. Grado then drove the truck a short distance to what appeared to be a common alleyway or driveway running between the backyards of houses facing East 84th and East 85th Streets. After the truck backed up to a garage located at 610 East 85th Street, Wright, who had called for backup, observed defendants Adrion, Grado, Scarpati and Torlone unloading cartons from the truck and placing them in the garage.
 

 When two back-up officers arrived, Wright drove with them onto the common driveway and identified himself as an FBI agent. At that point, having observed that the markings on the cartons matched the markings on the Samsonite luggage cartons that had been reported stolen, Agent Wright asked the group which of them had leased the Ryder truck. Defendant Grado stepped forward, acknowledged that he was the lessee and produced a rental agreement. He gave implausible responses, however, when asked whether he had a bill of lading, where he had gotten the merchandise, whether he knew the goods’ consignee or final destination and why he was unloading the goods into the garage of a private residence. Grado told the agent that he had just started a trucking company and that he was on his first job but did not know the last name or location of the person who had hired him. He also initially told the agent that this was his only truck and then stated that he had "forgotten” about the other one when confronted with the agent’s observations of a second truck on East 86th Street. The agents subsequently arrested defendants.
 

 Having been indicted for third degree criminal possession of stolen property, defendants moved to suppress the physical evidence. The trial court granted defendants a hearing on their motion and, at the same time, informed the People that
 
 *633
 
 they should make the FBI’s confidential informant available for a potential
 
 Darden
 
 hearing. Asserting that the FBI would not make its informant available, the People advised the court that they would not be able to comply. Consequently, the court was "unable to verify the confidential informant’s existence.” Finding that Agent Wright had reasonable suspicion but not probable cause for arrest in the absence of the information that had been supplied by the informant, the court ruled that the evidence that flowed from the illegal arrest, including the stolen property, should be suppressed.
 

 On the People’s appeal, however, the Appellate Division reversed the suppression order and revived the prosecution (188 AD2d 606). The Court reasoned that because of the People’s refusal to produce the informant, the informant’s information was reduced to the equivalent of an anonymous tip. Citing
 
 People v Elwell
 
 (50 NY2d 231), the Court posited that such a tip could be used as a basis for establishing probable cause if the arresting officers’ independent observations "are sufficiently confirmatory of criminal activity” (188 AD2d, at 607). Here, the Appellate Division concluded, probable cause was established by the combination of information Agent Wright had before he approached defendants and his observations, including defendant Grado’s unsatisfactory answers to his inquiries and the fact that the markings on the cartons defendants were unloading matched the markings on the stolen cartons. Thus, production of the confidential informant was not fatal to the People’s case. We now reject the Appellate Division’s analysis and hold that the indictment against the defendants should be dismissed.
 

 In
 
 People v Darden
 
 (34 NY2d 177, 181,
 
 supra),
 
 this Court held that it is "fair and wise” to require the production of an informant for an in camera inquiry "where there is insufficient evidence to establish probable cause apart from the testimony of the arresting officer as to communications received from [the] informer” and a question as to the informer’s identity is raised at the suppression hearing. While recognizing the "weighty considerations countervailing against disclosure” of the informant’s identity, the Court also deemed it appropriate to "protect against the contingency, of legitimate concern to a defendant, that the informer might have been wholly imaginary and the communication from him entirely fabricated”
 
 (id.,
 
 at 181-182). Accordingly, the Court devised a procedure that would best balance the parties’ competing interests.
 

 
 *634
 
 Under that procedure, once an appropriate challenge by the defense has been raised, the People are required to produce the police informant for an in camera inquiry unless they can demonstrate that the informant is unavailable and cannot be produced through the exercise of due diligence
 
 (see, People v Carpenito,
 
 80 NY2d 65, 68, citing
 
 People v Fulton,
 
 86 AD2d 675,
 
 affd
 
 58 NY2d 914;
 
 People v West,
 
 56 AD2d 955,
 
 revd on other grounds
 
 44 NY2d 656). The trial court may then question the informant outside the presence of the defendant or defense counsel, although counsel should be afforded an opportunity to submit written questions to be posed by the Judge
 
 (People v Darden, supra,
 
 at 181). Whether the informant’s identity should then be disclosed to the defense is a matter entrusted to the sound discretion of the trial court
 
 (see, People v Castillo,
 
 80 NY2d 578, 583;
 
 see also, People v Huggins,
 
 36 NY2d 827).
 

 In this case, the
 
 Darden
 
 procedure clearly was properly invoked. The trial court found — and the Appellate Division impliedly agreed — that the information derived from the confidential informant’s tip was necessary to establish probable cause. Although Agent Wright personally observed a number of suspicious circumstances, including the unloading of a "commercial quantity” of cartons from a rented vehicle into a private residence, markings on the cartons that matched the markings on the stolen cartons and the evasive answers of one of the suspects, these circumstances were not sufficient to link defendants to the purloined property without reference to the informant’s statements. Thus, under the established
 
 Darden
 
 analysis, this was a situation in which the trial court was authorized to require production of the informant.
 

 The People acknowledge these general principles. Moreover, they have not argued that these principles should not be applied here because the decision to withhold production of the informant was made by the law enforcement authorities of another jurisdiction. Instead, the People contend that a failure to comply with
 
 Darden
 
 should not lead to suppression in a situation such as this one, where the arresting officer’s own observations furnished substantial corroboration for the informant’s "tip.” Elaborating on the analysis employed by the Appellate Division, the People argue that the same principles that are used to validate the accuracy and reliability of an
 
 anonymous
 
 informant’s tip should be invoked to support the use of this
 
 confidential
 
 informant’s tip as a component of the arresting officer’s probable cause predicate. Relying on
 
 *635
 

 People v Elwell
 
 (50 NY2d 231,
 
 supra),
 
 the People assert that it would be unsound as a matter of judicial policy to require production of a known, albeit confidential, informant under circumstances in which an anonymous tipster’s information could be used to establish probable cause. Such a rule, in the People’s view, would furnish an incentive to perjury on the part of police witnesses and should therefore be shunned.
 

 The People’s position is flawed because it equates the inquiry that is mandated when probable cause is based upon an anonymous tip with the inquiry that is mandated when probable cause is derived from a tip from a known informant whose identity the People do not wish to reveal. The core problem in the first situation is whether and how the
 
 Aguilar-Spinelli
 

 [2]
 

 test requiring documentation of the informant’s reliability and/or basis of knowledge can be satisfied when the informant’s identity cannot be ascertained. In that context,
 
 People v Elwell (supra)
 
 and
 
 People v DiFalco
 
 (80 NY2d 693) held that the independent corroborative observations of the police may be used in certain circumstances to supply the missing veracity or basis-of-knowledge component of that two-pronged test. The teaching of
 
 Elwell
 
 and
 
 DiFalco
 
 is that law enforcement authorities have a reasonable basis for crediting a tip’s accuracy and for acting upon it when the details of an informant’s tip are borne out in significant ways by their own direct observations.
 

 The
 
 Darden
 
 procedure, however, addresses an entirely different problem. While
 
 Elwell
 
 and
 
 DiFalco
 
 concern the problem of assuring that the arresting officer or warrant issuer has acted upon information received from a sufficiently reliable and accurate informant,
 
 Darden
 
 concerns the analytically distinct problem of verifying the truthfulness of the police witness’s testimony about his or her dealing with a known informant (34 NY2d, at 181;
 
 see, People v Carpenito, supra,
 
 at 68;
 
 People v Fulton,
 
 58 NY2d 914, 916,
 
 supra; People v Huggins, supra,
 
 at 828). As to that question, the officer’s testimony regarding observed facts corroborating the accuracy of the informant’s purported tip is of no moment, since it does not aid the court in ascertaining that the source of the underlying information was, in fact, a real informant as distinguished from an unauthorized wiretap, an improper search or some other illegal origin. In situations where a question is raised about such matters, there is no satisfactory substitute for the
 
 *636
 
 production of the informant — or at least the production of extrinsic proof of the informant’s existence when the informant is demonstrably unavailable
 
 (see, e.g., People v Carpenito, supra,
 
 at 68).
 

 What is at stake in
 
 Darden
 
 situations is the integrity of the proceeding itself. While the People suggest that any misrepresentations about the origin of the police’s information may be adequately unmasked and addressed in the fact-finding process through the use of traditional credibility-testing methods such as cross-examination,
 
 Darden
 
 makes clear that the trial court’s options are not limited to such methods. We concluded in
 
 Darden
 
 that the most "sensitive and wise balancing of the rights of the individual defendant and the interests of the public” could be accomplished by permitting the trial court to call for the in camera production of the confidential informant whenever a question is raised as to that individual’s existence (34 NY2d, at 181-182). The People have offered no persuasive reason to modify that conclusion in this situation.
 

 Indeed, the need for the production of the informant in these situations is manifest. Notwithstanding Agent Wright’s on-the-scene observations of circumstances suggestive of criminality, the People’s showing fell short of probable cause without the confidential tipster’s information. Moreover, Agent Wright would not even have been in a position to make those observations without the information purportedly supplied by the informant, since he had no knowledge independent of that source that would have led him to the street addresses in Brooklyn where the observations were made. Thus, the informant’s tip was inextricably tied to every aspect of the People’s proof on the probable cause question, including the so-called "independent” indicia of criminality on which they now rely. Accordingly, the trial court was entitled to insist on production of the informant to assure itself that he or she was not "wholly imaginary” and that the claimed communication was not "entirely fabricated”
 
 (People v Darden, supra,
 
 at 182).
 

 Inasmuch as the People offered no legally cognizable basis for ignoring the trial court’s request for the production of the FBI’s informant, that court acted properly in holding that the information derived from the informant’s tip could not be used to establish probable cause. And, since the trial court was justified in concluding that the other information possessed by Agent Wright as a result of his own observations was not sufficient to constitute probable cause, that court did
 
 *637
 
 not err in concluding that the arrest was unlawful and that, accordingly, the evidence seized as a result of the arrest should be suppressed.
 

 Accordingly, the order of the Appellate Division should be reversed, defendants’ motions to suppress physical evidence granted and the indictment against each defendant dismissed.
 

 Chief Judge Kaye and Judges Simons, Hancock, Jr., Bellacosa, Smith and Levine concur.
 

 Order reversed, etc.
 

 [1]
 

 .
 
 See, People v Darden
 
 (34 NY2d 177).
 

 [2]
 

 .
 
 Spinelli v United States
 
 (393 US 410);
 
 Aguilar v Texas
 
 (378 US 108).