OPINION OF THE COURT
 

 Titone, J.
 

 Petitioner brought this CPLR article 78 proceeding to challenge a prison disciplinary determination that he was
 
 *117
 
 guilty of violating certain inmate rules. The evidence on which the determination was based consisted principally of information that had been provided to prison authorities by confidential informants. The primary issue in this appeal from the dismissal of petitioner’s article 78 petition is whether the determination was supported by substantial evidence even though the Hearing Officer did not personally interview the informants. We hold that a personal meeting between the Hearing Officer and the confidential informants is not required and that the informants’ hearsay statements can constitute "substantial evidence” as long as there are objective circumstances demonstrating the informants’ reliability and, based on those circumstances, the Hearing Officer makes an independent finding that the informants’ evidence is, in fact, reliable.
 

 I.
 

 The charges in this case originated in the murder of an inmate named Normaul Busjit. Following an in-house investigation, petitioner was charged in a misbehavior report with breaching inmate rules prohibiting assaults and violations of the Penal Law. The misbehavior report, which was prepared by Correction Lieutenant Annetts and served on petitioner on June 9,1992, stated:
 

 "Based on information provided by confidential sources, you * * * are hereby charged, in conspiracy with others, with the assault on inmate Nor-maul Busjit * * *, which occurred on May 4, 1992 in the facility gymnasium between the hours of 9:30 a.m. and 10:55 a.m., resulting in the death of Normaul Busjit.”
 

 A Tier III hearing was conducted between June 12 and June 15, 1992
 
 (see,
 
 7 NYCRR part 254). Petitioner denied the charges, stating that he knew nothing about the incident. Although he acknowledged having been in the gymnasium during the period in question, petitioner asserted that he had never entered the adjoining bathroom in which the homicide took place. Twelve inmates testified on petitioner’s behalf, each stating that investigators had threatened hardships or promised special benefits in an effort to obtain cooperation. Two additional inmate witnesses whom petitioner had identified declined to testify after stating that they either did not
 
 *118
 
 want to get involved or did not have relevant knowledge about the incident. Petitioner also called Lieutenant Annetts, the investigating officer, and elicited that he had personally interviewed some but not all of the confidential informants. In the interests of security, however, the Hearing Officer imposed stringent restrictions on questions by petitioner that were designed to elicit the identity of the informants or the contents of their statements.
 

 In addition to the live testimony, the Hearing Officer read into the record several memoranda regarding the incident, including a description of the discovery of Busjit’s body in the gymnasium bathroom. The Hearing Officer also advised petitioner that there was a confidential tape and other restricted information, all of which would be reviewed before the determination was made. Petitioner’s request for a redacted copy of the confidential information was rejected.
 

 At the completion of the hearing, the Hearing Officer found petitioner guilty of the charges. In reaching Ms conclusion, the Hearing Officer stated: "It is my opinion that the confidential data presented to me was coherent, detailed, made sense, and is believeable
 
 [sic].
 
 Thus, I relied on such confidential information.” The Hearing Officer imposed a penalty of nine years in the Special Housing Unit and loss of privileges, and the disposition was administratively affirmed. The penalty was reduced, however, after a Grand Jury failed to indict petitioner for second degree murder.
 

 Petitioner brought the present article 78 proceeding to challenge the determination, raising several of the arguments he had previously made before the Hearing Officer. Among these arguments was the contention that the finding of guilt was defective because the Hearing Officer had not personally interviewed the confidential informants on whose statements he relied, and, consequently, he could not have independently assessed their credibility.
 

 The Appellate Division rebuffed petitioner’s argument, stressing that there are several acceptable methods for evaluating an informant’s credibility other than conducting a personal interview and that there were sufficient objective indicia of reliability here. Rejecting petitioner’s additional claims of procedural error, the Court confirmed respondents’ determination and dismissed the petition. Having subsequently granted petitioner leave to appeal, we now affirm.
 

 
 *119
 
 II.
 

 It is beyond question that prison disciplinary determinations may be predicated on evidence other than live testimony and that, in fact, determinations based only on hearsay evidence such as misbehavior reports are permissible, assuming that the evidence is sufficiently reliable
 
 (People ex rel. Vega v Smith,
 
 66 NY2d 130). Further, it has been held that confidential information may be considered even though the inmate has not been permitted access to it
 
 (Matter of Vogelsang v Coombe,
 
 66 NY2d 835,
 
 affg
 
 105 AD2d 913). These tenets are consistent with the underlying premise that an inmate does not have a constitutional right to cross-examine adverse witnesses at a disciplinary hearing
 
 (see, Matter of Laureano v Kuhlmann,
 
 75 NY2d 141).
 

 Petitioner does not dispute the foregoing principles, nor does he contend that a determination based primarily on information from a confidential source is invalid. Instead, his argument is that where confidential information is relied upon, the Hearing Officer must personally interview the informants to determine whether they are credible. Since the Hearing Officer in this case relied solely on the written material documenting the informants’ statements, petitioner contends, his obligation to make an independent credibility assessment was not satisfied.
 

 We agree with petitioner’s threshold premise that a Hearing Officer in a prison disciplinary proceeding may not rely on information provided by confidential informants unless the Hearing Officer first makes an independent assessment of the informant’s reliability. While this Court has not expressly held as much, the lower courts of this State have long assumed that the Hearing Officer cannot simply rely on the investigating authority’s determination but must instead make his or her own evaluation of the informant’s credibility
 
 (e.g., Matter of Perron v Coughlin,
 
 199 AD2d 903;
 
 Matter of Gaston v Coughlin,
 
 182 AD2d 1085;
 
 Matter of Leach v Coughlin,
 
 179 AD2d 1050;
 
 Matter of Franklin v Hoke,
 
 174 AD2d 908;
 
 Matter of Moore v Coughlin,
 
 170 AD2d 723;
 
 Matter of Carter v Kelly,
 
 159 AD2d 1006;
 
 Matter of Nelson v Coughlin,
 
 148 AD2d 779;
 
 Matter of Wynter v Jones,
 
 135 AD2d 1032;
 
 Matter of Harris v Coughlin,
 
 116 AD2d 896;
 
 Matter of Alvarado v LeFevre,
 
 111 AD2d 475). Similarly, most of the Federal courts that have considered the issue have held that it denies due process for a Hearing Officer to simply adopt a determination
 
 *120
 
 of reliability that was made by the investigator who received the informant’s evidence
 
 (e.g., Richardson v Selsky,
 
 5 F3d 616 [2d Cir];
 
 Taylor v Wallace,
 
 931 F2d 698 [10th Cir];
 
 Freitas v Auger,
 
 837 F2d 806 [8th Cir];
 
 Zimmerlee v Keeney,
 
 831 F2d 183 [9th Cir];
 
 Henderson v Carlson,
 
 812 F2d 874 [3d Cir];
 
 Hensley v Wilson,
 
 850 F2d 269 [6th Cir];
 
 McCollum v Williford,
 
 793 F2d 903 [7th Cir];
 
 Mendoza v Miller, lid
 
 F2d 1287 [7th Cir];
 
 but cf., Russell v Scully,
 
 15 F3d 219 [2d Cir] [on reh]).
 

 Adoption of this principle in the context of prison disciplinary proceedings is supported by the rationale that this Court has previously used in cases involving the issuance of warrants by neutral Magistrates. The Court has held that when an application for a search warrant has been predicated on information obtained from an informant, the judicial officer before whom the application has been placed cannot rely on the applicant’s assessment of the informant’s reliability but must instead make that assessment independently, usually on the basis of the facts contained in the application
 
 (e.g., People v Martinez,
 
 80 NY2d 549;
 
 People v Hanlon,
 
 36 NY2d 549;
 
 see, People v Griminger,
 
 71 NY2d 635). The rule is derived from the self-evident premise that where the law requires the interposition of a neutral arbiter, the obligation to weigh and resolve the material fact questions lies squarely with the arbiter and may not be delegated to the investigator or accuser
 
 (see, People v Potwora,
 
 48 NY2d 91, 94;
 
 People v Hanlon, supra).
 
 This axiomatic principle is certainly applicable in this context, where the potential penalty — extended confinement to the Special Housing Unit — is severe and the law and governing administrative rules require an adjudicative hearing before an impartial Hearing Officer
 
 (see, Wolff v McDonnell,
 
 418 US 539; 7 NYCRR 254.1). Indeed, the regulations applicable to this class of hearings specifically exclude the "officer who reviewed the misbehavior report, or a person who has investigated the incident” from any fact-finding role (7 NYCRR 254.1).
 

 III.
 

 We conclude, however, that petitioner cannot prevail in his main argument, since its determinative premise — that the Hearing Officer’s obligation to assess credibility requires a personal interview with the informant — is not sustainable. The Federal courts have already held that there is no single mandatory method for determining the reliability of a confi
 
 *121
 
 dential informant in the prison setting
 
 (Taylor v Wallace, supra; Freitas v Auger, supra; cf., Mendoza v Miller, supra).
 
 Indeed, the Federal view is that any reasonable method for establishing the informant’s reliability will suffice
 
 (see, Taylor v Wallace,
 
 931 F2d 698,
 
 supra; see also, Kyle v Hanberry,
 
 677 F2d 1386).
 

 We decline petitioner’s invitation to reject this flexible Federal rule for a more stringent State rule that would make personal interviews the
 
 sine qua non
 
 of reliability assessments in prison disciplinary proceedings conducted in New York. We have previously eschewed the use of rigid evidentiary tests in prison disciplinary cases, holding instead in
 
 People ex rel. Vega v Smith (supra,
 
 at 139) that the correction agency’s determination must be based on " 'the kind of evidence on which responsible persons are accustomed to rely in serious affairs’ ”
 
 (accord, Matter of Lahey v Kelly,
 
 71 NY2d 135;
 
 see also, Matter of Foster v Coughlin,
 
 76 NY2d 964). This formula reflects our judicial preference for a pliant standard that is simply incompatible with the absolutist approach that petitioner advocates.
 

 Moreover, while face-to-face contact is a helpful tool for assessing credibility, it is not the only dependable method. In the context of probable cause determinations, for example, we have held that the veracity of an anonymous informant’s tip can be proven through independent corroborative details
 
 (People v DiFalco,
 
 80 NY2d 693;
 
 People v Elwell,
 
 50 NY2d 231). Similarly, it has also been held that the existence of a satisfactory "basis of knowledge” for an anonymous informant’s tip may be established without reference to outside corroboration if the tip itself "is so detailed as to make clear that it must have been based on personal observation”
 
 (People v Elwell, supra,
 
 at 241). Notably, the standard underlying these rules for assessing probable cause, i.e., that the evidence should be "of a quality * * * reasonably to be acted upon”
 
 (id.,
 
 at 236-237), is similar in some respects to the standard we articulated in
 
 People ex rel. Vega v Smith (supra,
 
 at 139) for the caliber of evidence on which prison disciplinary determinations must be based.
 

 Finally, our disinclination to embrace a blanket rule requiring the Hearing Officer to interview the agency’s confidential informant in every case is reinforced by our sensitivity to the exigencies of maintaining order in the simmering and often dangerous prison environment. We have previously recognized
 
 *122
 
 the right and, indeed, the responsibility of prison officials "to reduce the risk of violence between the accused inmate and those who would charge him or furnish evidence against him”
 
 (Matter of Laureano v Kuhlmann,
 
 75 NY2d 141, 146,
 
 supra).
 
 Other courts have also noted that "[r]etaliation is much more than a theoretical possibility” in prisons
 
 (Wolff v McDonnell, supra,
 
 at 562). While in camera interviews and other measures calculated to enhance secrecy may provide a measure of confidentiality, at least in the abstract, the efficiency of the prison grapevine is a factor that cannot safely and sensibly be ignored
 
 (see, McCollum v Miller,
 
 695 F2d 1044, 1049;
 
 see also, McKinney v Meese,
 
 831 F2d 728, 733;
 
 Withers v Levine,
 
 615 F2d 158, 160,
 
 cert denied
 
 449 US 849).
 

 Notably, the ability of prison authorities to protect inmate-informants from exposure is critical to their capacity to maintain order and enforce prison disciplinary rules. Because of the nature of the prison environment, correction officials must rely heavily on the willingness of informants to report specific violations and provide general intelligence about the inner workings of inmate society
 
 (see, Kyle v Hanberry, supra,
 
 at 1390). This important channel of information would obviously be impaired if prison investigators were unable to assure their informants complete confidentiality
 
 (cf., People v Castillo,
 
 80 NY2d 578). Accordingly, we should be wary of inappropriately restricting prison authorities’ ability to protect their informants and should instead give a measure of deference to the choices that those authorities make
 
 (see, Dawson v Smith,
 
 719 F2d 896, 899,
 
 cert denied
 
 466 US 929;
 
 see also, People ex rel. Vega v Smith, supra,
 
 at 142).
 

 In this case, for example, the Hearing Officer had ample basis in the material before him to believe that petitioner was part of a tightly knit and far-reaching information network with a serious potential for retaliatory violence. Indeed, as the Hearing Officer specifically observed, petitioner "demonstrated [during the course of the hearing] that [he] kn[e]w who spoke to who[m] on all points.” Given the evident risk to the informants’ safety if their identity were revealed, the Hearing Officer committed no error of law in declining to have them called away from their daily routine for in camera interviews.
 

 Indeed, the Hearing Officer did not in any way abdicate his adjudicative responsibility or otherwise fall into legal error in finding petitioner guilty of the charged violations on the basis of the record before him. It is apparent from the Hearing
 
 *123
 
 Officer’s statements that he reviewed the confidential file carefully and satisfied himself that the information it contained was reliable. Moreover, the factors that the Hearing Officer expressly relied on, Le., that the confidential information was "coherent,” "detailed” and "made sense,” are valid, well-accepted bases for making a credibility assessment
 
 (see, People v DiFalco, supra; People v Elwell, supra).
 
 Significantly, our own in camera review of the confidential material leads us to conclude that the Hearing Officer’s finding on this point is supported by the record. In addition to its internal coherence and detail, the confidential information before the Hearing Officer was corroborated in several important respects by independent documentary evidence that made the informants’ assertions highly credible. While the material’s specifics are protected by a continuing veil of confidentiality, we have no hesitancy in concluding that it was " 'the kind of evidence on which responsible persons are accustomed to rely in serious affairs’ ”
 
 (People ex
 
 rel.
 
 Vega v Smith, supra,
 
 at 139) and that, accordingly, there was substantial evidence for the agency’s determination of guilt.
 

 We similarly reject petitioner’s contention that the Hearing Officer erred in denying petitioner’s request for a redacted copy of the confidential material on which the determination was based. In these circumstances, the identity of the source was evident from the substance of the information conveyed and, consequently, meaningful redaction was not possible
 
 (see, Matter of Morales v Senkowski,
 
 165 AD2d 393 [Levine, J.];
 
 see also, McCollum v Miller, supra,
 
 at 1048).
 

 Petitioner’s contention that he did not receive adequate notice of the acts for which he was charged is equally merit-less. In the context of prison disciplinary proceedings, the notice requirement is satisfied when the inmate is given enough particulars to make an effective response
 
 (see, Matter of Lahey v Kelly, supra,
 
 at 144;
 
 Matter of Vogelsang v Coombe, supra).
 
 In this case, petitioner was given all the information necessary to the preparation of a defense, including that he was charged with conspiring to murder inmate Busjit, that the murder occurred during the morning of May 4, 1992 and that the facility gymnasium was the site of the crime. Contrary to petitioner’s contention, there was no need to notify him of the specific role he was alleged to have played, since the act of conspiring to commit a deadly assault was itself sufficient to constitute a violation of the prison rules (Standards of Inmate Behavior rules 1.00, 100.10 [7 NYCRR 270.2 (A), (B) (1) (i)]).
 

 
 *124
 
 There was also no abuse of discretion in the Hearing Officer’s decision to deny petitioner an adjournment to prepare for the hearing. Petitioner had been notified of the charges on June 9, 1992 and met with his assigned assistant later that same day. He received all of the documents he requested on the evening before the hearing. Notably, there was nothing particularly complex about the material that might have required extended research or study. Most importantly, in denying an adjournment, the Hearing Officer told petitioner that any specific problems he had could be addressed as they arose during the course of the hearing. Petitioner did not identify any such problems during the hearing, and he has not identified on this appeal any particular prejudice he might have suffered as a result of the Hearing Officer’s decision. Finally, we find no basis for reversal in the Hearing Officer’s decision to conduct off-the-record interviews with two inmates to confirm those inmates’ refusals to testify on petitioner’s behalf. The Hearing Officer fully described the contents of those very brief exchanges on the record and, in this context, insisting on a pro forma record appearance by these "witnesses” would have served no useful purpose.
 

 Accordingly, the judgment of the Appellate Division should be affirmed, without costs.
 

 Chief Judge Kaye and Judges Simons, Bellacosa, Smith, Levine and Ciparick concur.
 

 Judgment affirmed, without costs.