■ In the Matter of ARMANDO COLON, Petitioner, v GLENN GOORD, as Commissioner of the Department of Correctional Services, Respondent. [665 NYS2d 118] —Spain, J. Proceeding pursuant to CPLR article 78 (transferred to this Court by order of the Supreme Court, entered in Albany County) to review a determination of respondent which found petitioner guilty of violating certain prison disciplinary rules.

Petitioner, an inmate at Great Meadow Correctional Facility in Washington County, was charged in a misbehavior report with Penal Law offenses, conspiring to escape and smuggling, after being implicated as a participant in a plan to escape from the facility. Following a disciplinary hearing, petitioner was found guilty of conspiring to escape and smuggling. Petitioner commenced this CPLR article 78 proceeding challenging the administrative determination affirming the disposition of the Hearing Officer upon a number of grounds.

Petitioner contends, initially, that he was denied effective employee assistance and that his assistant, in fact, abused her authority by interfering with his attempt to have inmate and coconspirator John Maier testify at the hearing. We find these claims to be without merit. The record discloses that the assistant was appointed and met with petitioner on November 3, 1995, the day after the misbehavior report was signed. On November 6, 1995, in accordance with petitioner's request to obtain the testimony of a number of witnesses at the hearing, the assistant sent a facsimile transmission to Shawangunk Correctional Facility in Ulster County where Maier was housed indicating that Maier had been requested to testify at petitioner's hearing on November 8, 1995. The second page of the transmission advised that a response was needed by 12:00 P.M. on November 7, 1995. Included with the transmission was a blank witness refusal to testify form. The cover sheet of the transmission contained the instruction "refusal does not need reason. yes or no will suffice."

Although the record does not contain a copy of the response to this request, the employee assistance form signed on November 7, 1995 indicates that Maier was among the witnesses who had agreed to testify. Following the commencement of the hearing, the assistant sent a follow-up facsimile transmission to Maier requesting him to provide responses to specific questions which petitioner had drafted. Thereafter,

Maier failed to provide the requested responses and, during the hearing on November 15, 1995, the Hearing Officer ascertained through a telephone discussion with a correction officer at Shawangunk that Maier was refusing to testify.

In our view, the record contains no evidence of any impropriety by the employee assistant in her handling of petitioner's case. The fact that the assistant faxed to Maier a blank witness refusal form with a notation suggesting that Maier could refuse to testify without having to give an explanation does not establish interference by the assistant in obtaining Maier's testimony especially in light of the fact that Maier, despite the notation, initially agreed to testify and refused only after petitioner's list of questions was faxed to him. Upon our review of the record, we find that the assistant was not biased and provided petitioner with meaningful assistance (see, Matter of Rivera v Coombe, 241 AD2d 643; Matter of Ventimiglia v Coombe, 233 AD2d 610).

Further, we reject petitioner's assertion that he was denied his right to call Maier as a witness at the hearing in violation of 7 NYCRR 254.5 (a). Petitioner revealed at the hearing that he received a handwritten note from his employee assistant informing him that Maier had been interviewed at Shawangunk by two correction officers who informed her by telephone that Maier refused to answer petitioner's list of questions which were sent to Maier by the assistant, and that the reason he gave for his refusal was "because of an ongoing investigation". The record also reveals that at the bottom of the list of questions a correction officer notes that Maier "refused to make any comment or answer any questions". Later in the hearing the Hearing Officer spoke by telephone to Correction Sergeant T. Looney, the supervisor of the special housing unit where Maier resided at Shawangunk, regarding petitioner's request for Maier's testimony. Looney reported that he informed Maier that he had been called as a witness by petitioner. Looney explained that Maier refused to testify, that Maier refused to sign the refusal form, that Maier refused to engage in "any more conversation pertaining to the issue" and that Looney himself noted Maier's refusal on the witness refusal form, which was witnessed by another correction officer. The Hearing Officer requested that Looney fax the form to him; the form, dated November 15, 1995, was received and made part of the record.

Although an inmate has a conditional right to call witnesses at a disciplinary hearing (see, 7 NYCRR 254.5 [a]), a charged inmate does not have the right to confront or cross-examine

witnesses (*see, Matter of Abdur-Raheem v Mann*, 85 NY2d 113, 119). Moreover, a Hearing Officer is not required to personally interview a witness who refuses to testify, as long as the Hearing Officer makes a sufficient inquiry into the facts surrounding the refusal in order to determine that the refusal is genuine (*see, Matter of Boyd v Coughlin*, 220 AD2d 913). After the interview with Looney and the receipt of the refusal form, the Hearing Officer concluded that Maier properly exercised his right to refuse to testify and that his refusal was neither coerced nor caused by the misconduct of any party. In our view, the record amply supports the conclusion of the Hearing Officer who, in addition to considering the evidence already before him, made sufficient inquiry into the facts surrounding the refusal so as to determine the genuineness of the refusal (*see, Matter of Boyd v Selsky*, 232 AD2d 929; *Matter of Boyd v Coughlin, supra*). Under the circumstances of this case, it should not have been a surprise to the Hearing Officer that Maier was refusing to testify.

Finally, upon our review of the record, we conclude that the determination is supported by substantial evidence. Hearsay, in the form of confidential information relayed to the Hearing Officer, may provide substantial evidence to support a determination of guilt where the Hearing Officer makes an independent assessment and determines that the information is reliable and credible (*see, Matter of Abdur-Raheem v Mann, supra*, at 119; *People ex rel. Vega v Smith*, 66 NY2d 130, 139; *Matter of Bostic v Coughlin*, 216 AD2d 766). Notably, there is no requirement that the Hearing Officer personally interview the confidential informant in order to make such an assessment (*see, Matter of Abdur-Raheem v Mann, supra*, at 120-122; *Matter of Harrison v Selsky*, 222 AD2d 914, *appeal dismissed* 87 NY2d 1054). Here, the Hearing Officer heard the testimony of an investigating officer who was the recipient of confidential information which was highly detailed and independently corroborated by physical evidence (*see, Matter of Abdur-Raheem v Mann, supra*, at 122-123). The record supports the Hearing Officer's finding that the confidential information was "clear, unequivocal and independently verifiable". Accordingly, the determination is supported by substantial evidence establishing that petitioner arranged to have hacksaw blades smuggled into the facility in order to effectuate an escape.

Mercure, J. P., Crew III, White and Peters, JJ., concur. Adjudged that the determination is confirmed, without costs, and petition dismissed.