Cardona, P. J., Peters, Spain and Carpinello, JJ., concur. Ordered that the judgment is affirmed.

■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JAMEL SMALLS, Appellant. [707 NYS2d 245] —Cardona, P. J. Appeal from a judgment of the County Court of Albany County (Rosen, J.), rendered September 17, 1998, upon a verdict convicting defendant of the crimes of attempted murder in the second degree, assault in the first degree and criminal possession of a weapon in the second degree.

Maurice Jacobs was shot on September 14, 1997 in his apartment located on Ten Broeck Street in the City of Albany. On September 22, 1997, Infinite Bozeman and Rakeem Wade, accompanied by their mothers, appeared at the Albany Police Department. Bozeman and Wade told the police that they were present during the shooting and gave statements implicating a tall, thin, dark-skinned black male named "Mel" who was wearing a tan checkered shirt and also hung around the Ida Yarborough Apartments. Acting upon those statements and an anonymous phone call stating that Mel was, at that moment, in front of 97 Ida Yarborough, Albany Police Detectives Joseph Severance and Kenneth Kennedy went to that location together with other officers where they observed defendant, who fit the description. They approached defendant and when he confirmed that his name was Mel, he was placed under arrest.

On the way to the police station, defendant stated: "I know what this is all about." Kennedy immediately administered *Miranda* warnings and, after securing defendant's assent to continue, asked him about the gun. Defendant told Kennedy he gave the gun to "some guy up at Clinton [Avenue] and Lark [Street]" and that it was a .25-caliber pistol. Thereafter, defendant confessed to the shooting and signed a written statement.

Defendant was indicted for the crimes of attempted murder in the second degree, assault in the first degree and criminal possession of a weapon in the second degree. Following a suppression hearing, County Court denied defendant's motion to suppress the oral admissions and the written statement. Subsequently, defendant was convicted of the crimes charged and sentenced, as a second felony offender, to concurrent determinate prison terms equaling 18 years.

Defendant contends that his arrest was unlawful because the police lacked the requisite probable cause due to the unreliability of Bozeman and Wade as informants. The People may establish probable cause for a warrantless arrest based upon hearsay information supplied by an informant provided both

the veracity and basis of knowledge requirements of the *Aguilar-Spinelli* test (*see, Spinelli v United States,* 393 US 410; *Aguilar v Texas,* 378 US 108) have been met. The test requires "a reasonable showing that the informant was reliable and had a basis of knowledge for the statement" (*People v Hetrick,* 80 NY2d 344, 348; *see, People v Jackson,* 235 AD2d 923, 924).

Turning first to the basis of the knowledge test, we find that it was easily satisfied inasmuch as Bozeman and Wade personally observed defendant's criminal activity (*see, People v Bigelow,* 66 NY2d 417, 423). The veracity component of the test "relates to the validity of the information and requires a showing *either* that the informant is credible and that the information supplied may, for that reason, be accepted as true *or,* in the absence of such showing, that the specific information given is reliable" (*People v Di Falco,* 80 NY2d 693, 696-697 [emphasis in original]). Here, the People satisfied the veracity component by showing that the police independently verified significant details of the information provided by Bozeman and Wade (*see, id.,* at 699). They told the police that the shooting occurred in the victim's apartment located on Ten Broeck Street and that the victim had been shot in the head, information which the police knew to be true based upon their prior investigation. Furthermore, defendant fit the physical description of the perpetrator, wore the type of shirt described by Bozeman and Wade and answered to the name "Mel" which they also provided to the police. Significantly, Bozeman and Wade provided the information to the police in face-to-face interviews upon their own initiative (*see, id.,* at 699-700). We find that the police possessed sufficient independent verification of the information provided by Bozeman and Wade to satisfy the veracity requirement of the *Aguilar-Spinelli* test.

Defendant further argues that Kennedy failed to specifically advise him, as part of the *Miranda* warnings, that he had the right, at any time during the questioning, to exercise his *Miranda* rights and refuse to answer further questions. As a consequence, he asserts that his purported waiver of those rights was ineffectual. We disagree. Initially, we note that defendant did not challenge the sufficiency of the *Miranda* warnings before County Court. At the suppression hearing, defendant only argued that the warnings had never been administered. Therefore, defendant failed to preserve the alleged error for appellate review (*see, People v Tutt,* 38 NY2d 1011; *People v Robinson,* 231 AD2d 927, *lv denied* 89 NY2d 929). In any event, were we to address the issue, we would find that the warnings, as recited, reasonably informed defendant of his *Miranda*

rights (*see, People v Bartlett*, 191 AD2d 574, *lv denied* 81 NY2d 1010) and that he knowingly and voluntarily waived them.

Next, defendant contends that the testimonies of Bozeman and Wade were so contradictory and untruthful that they should not have been believed. Based upon our review, we find that their testimonies were, for the most part, consistent. Any inconsistencies in their testimonies and defendant's denial that he committed the crimes merely presented credibility issues for the jury's resolution (*see, People v Waite*, 243 AD2d 820, 822-823, *lv denied* 91 NY2d 882; *People v Corbett*, 208 AD2d 1059). Furthermore, exercising our factual review power, we find that the verdict was not against the weight of the evidence (*see,* CPL 470.15 [5]; *People v Bleakley*, 69 NY2d 490, 495).

Finally, we are unpersuaded by the argument that County Court abused its discretion in deciding that, in the event defendant chose to testify, cross-examination would be permitted regarding his 1996 conviction for attempted robbery in the second degree. We note that the court's ruling did not discourage defendant from testifying (*cf., People v Williams*, 56 NY2d 236). We further note that defendant's prior offense was a theft-related crime whose underlying facts were not similar to the facts which formed the basis of the instant charges and the prior conviction "[bore] logically and reasonably on the issue of credibility" (*People v Sandoval*, 34 NY2d 371, 376). Under the circumstances here, we cannot say that the court erred in determining that the probative worth of the evidence on the issue of defendant's credibility was not outweighed by the risk of unfair prejudice to him (*see, id.*, at 375; *People v Keller*, 246 AD2d 828, *lv denied* 91 NY2d 1009). Accordingly, we find no basis to disturb the court's *Sandoval* ruling.

· Mercure, Peters, Graffeo and Mugglin, JJ., concur. Ordered that the judgment is affirmed.