■ In the Matter of ANTHONY PERRETTI, Petitioner, v BRIAN FISCHER, as Commissioner of Correctional Services, Respondent. [871 NYS2d 746]—

Spain, J. Proceeding pursuant to CPLR article 78 (transferred to this Court by order of the Supreme Court, entered in Albany County) to review a determination of respondent which found petitioner guilty of violating certain prison disciplinary rules.

After an October 17, 2007 appearance before the Board of Parole, petitioner, an inmate at Otisville Correctional Facility in Orange County, was denied parole. He then filed a formal complaint with the Division of Parole against a parole officer named Goldsmith alleging that a packet of documents submitted by his attorney was not in his parole file at the hearing. In a misbehavior report dated October 23, 2007, petitioner was charged with violating two prison disciplinary rules for soliciting personal identifying information (i.e., a home address) of an employee of the Department of Correctional Services—Senior

Parole Officer James Cassell—and making a physical threat against Cassell. The report was based upon confidential information received by its author, Sergeant Howerter, the day before, during an interview with a confidential informant.

At the multiday tier III disciplinary hearing, petitioner testified at length, denying ever attempting to acquire Cassell's home address or making any threats against him. He was adamant that Cassell had repeatedly helped him before and during the parole hearing to ensure that his parole papers were in order, that he was never angry at Cassell and had no reason to seek his home address or to threaten him; he explained that his anger was directed solely at Goldsmith, against whom he had filed a complaint. The hearing was adjourned to take the confidential testimony of Howerter and the informant. Thereafter, the Hearing Officer explained her denial of most of petitioner's requests to call witnesses, but granted his request to call Cassell. Cassell testified that petitioner never asked him for his home address or directly threatened him, that their conversations during the parole process had been "cordial" and he was not aware of any motive for petitioner to harm him although he had received information indicating that petitioner had engaged in the charged conduct against him. Petitioner was found guilty of soliciting personal identifying information related to Cassell and not guilty of making threats against him. He was sentenced to 365 days in the special housing unit, six months of which were suspended and deferred, and later modified on administrative appeal. Petitioner commenced this CPLR article 78 special proceeding, transferred to this Court, and we confirm.

The determination of guilt is supported by substantial evidence, including the misbehavior report, the in camera testimony of its author and of the confidential informant, and the documentary evidence (*see Matter of Nova v Selsky*, 54 AD3d 453, 454 [2008]; *Matter of Crosby v Selsky*, 24 AD3d 1076, 1077 [2005]). We do not agree with petitioner's contention that he lacked fair notice of the charges because the misbehavior report did not allege "the date, time and place" that he committed the alleged misconduct, i.e., attempting to acquire Cassell's home address (7 NYCRR 251-3.1 [c] [3]).* The misbehavior report clearly advised that the "incident date" was October 22, 2007, the date on which its author, Howerter, received "confidential information" that petitioner "has been attempting to acquire [Cassell's] home address," providing adequate information to

---

* As petitioner was acquitted of making a threat against Cassell, we need not address that charge.

apprise him of the charges and afford him an opportunity to prepare his defense (*see Matter of Kornegay v Goord*, 21 AD3d 1236, 1236-1237 [2005]; *Matter of Shannon v Goord*, 282 AD2d 909, 910 [2001]; *see also Matter of Blake v Goord*, 35 AD3d 1016, 1017 [2006]; *Matter of Jackson v Smith*, 13 AD3d 685 [2004], *lv denied* 4 NY3d 707 [2005]; *Matter of De Grijze v Selsky*, 305 AD2d 761, 761 [2003], *appeal dismissed* 100 NY2d 613 [2003]; *Matter of Moore v Goord*, 279 AD2d 682, 683 [2001]). Further, after the in camera testimony, the Hearing Officer resumed the hearing and summarized the confidential testimony for petitioner, including the dates on which petitioner was alleged to have attempted to secure Cassell's address, i.e., October 17, 18 and 19, 2007. The confidential information on which the misbehavior report was based was received only days after those dates. Thus, petitioner was provided adequate notice of the alleged misconduct and sufficient information to effectively respond to the charges (*see Matter of Fayton v Goord*, 17 AD3d 753, 753-754 [2005]; *see also Matter of Ponder v Fischer*, 54 AD3d 1094 [2008]; *Matter of Werner v Philips*, 20 AD3d 711, 712 [2005]; *Matter of Carini v Selsky*, 19 AD3d 718, 719 [2005]). Petitioner was not entitled to any information regarding another inmate who was separately charged with attempting to obtain Cassell's address, given the confidential evidence in the record demonstrating that the charges pertained to an unrelated incident (*see* 7 NYCRR 251-3.1 [c] [4]).

We are also unpersuaded that petitioner was deprived of his right to call witnesses. After carefully considering petitioner's request to call numerous correction employees and his attorney to testify that he had never expressed animus toward Cassell during or after the parole hearing, the Hearing Officer concluded that their testimony was not relevant as they had no direct involvement in or knowledge of the charged conduct. In doing so, the Hearing Officer explicitly and repeatedly indicated that she fully credited petitioner's testimony that he spoke with all of these individuals during or after the parole hearing and only expressed anger and frustration at Goldsmith, not Cassell, who had helped him. The Hearing Officer also credited that the requested witnesses would so testify, rendering their testimony redundant. Given that petitioner's motive for seeking Cassell's address and feelings toward Cassell were not an element of the charge (*see* 7 NYCRR 270.2 [B] [14] [xvi]), we find no error in the Hearing Officer's conclusion that the requested testimony had no direct bearing on or relevance to the charge (*see* 7 NYCRR 253.5 [a]; 254.5 [a]; *see also Matter of Pettus v West*, 28 AD3d 907, 908 [2006]; *Matter of Seymour v Goord*, 24 AD3d 831, 832 [2005], *lv denied* 6 NY3d 711 [2006]; *Matter of Koehl v*

*Senkowski,* 9 AD3d 749, 750 [2004], *lv denied* 3 NY3d 612 [2004]).

Likewise, while the record does not reflect that petitioner was given a written statement of the reasons for denying his request to call the addressees of his parole-related formal complaint in order to verify it (*see* 7 NYCRR 254.5 [a]), the complaint itself was admitted into evidence and petitioner never objected at the hearing when these witnesses were not called or requested that they be called for any other purpose, rendering his contentions unpreserved (*see Matter of Frazier v Artus,* 40 AD3d 1288, 1288 [2007]). In any event, the record discloses the reason for the denial, that those addressees had no direct knowledge of the charged conduct with respect to Cassell (*see Matter of Bonez v Senkowski,* 265 AD2d 713 [1999]). The sole inmate witness requested by petitioner signed a refusal to testify form, which the Hearing Officer confirmed, and petitioner was so advised. With regard to the in camera testimony and documents, the Hearing Officer properly determined and explained that confidentiality was necessary to protect the informant (*see Matter of Alba v Goord,* 6 AD3d 847 [2004]) and independently assessed credibility by personally questioning the testifying informant (*see Matter of Nova v Selsky,* 54 AD3d at 454). Petitioner was not entitled to access to the confidential information or to cross-examine those confidential witnesses (*see Matter of Abdur-Raheem v Mann,* 85 NY2d 113, 119 [1995]).

We also find that petitioner has not demonstrated any prejudice from the claimed shortcomings in the aid provided by the employee assistant (*see Matter of Gonzalez v Fischer,* 53 AD3d 945, 946 [2008]). While the assistant should have attempted to interview the requested witnesses and reported back the results (*see* 7 NYCRR 251-4.2), as concluded above, the witnesses at issue for the most part had no direct knowledge of the charged conduct and, in one case, refused to testify, undermining any claim of prejudice resulting from the failure to interview them (*see Matter of Burgess v Selsky,* 50 AD3d 1347, 1348 [2008]). Likewise, Cassell and Howerter (in camera)—the requested witnesses who had direct knowledge—testified at the hearing and the failure to interview them is not shown to have been prejudicial (*see Matter of Serrano v Coughlin,* 152 AD2d 790, 792 [1989]; *cf. Matter of Velasco v Selsky,* 211 AD2d 953, 954 [1995]).

Petitioner's other claims also fail. He was told that tapes of his phone conversations with counsel did not exist, and the Hearing Officer, not the assistant, properly fulfilled the duty of independently assessing the informant's credibility, negating his remaining claims attributing prejudice to his assistant's inac-

tion. Finally, the allegations of hearing officer bias are belied by the record (*see Matter of Burgess v Selsky*, 50 AD3d at 1348).

Peters, J.P., Lahtinen, Kane and Kavanagh, JJ., concur. Adjudged that the determination is confirmed, without costs, and petition dismissed.